A. died seised of lands, leaving three sons, B., C. & D. In an action of ejectment by the heirs of B. against E., who claimed to hold under D. E. offered in evidence the will of A. dated in 1757, by which he devised his real estate to his three sons and their heirs, in equal proportions; but it being objected that the will was void, on account of the insanity of the testator, E. waived the production of the will, and relied on a parol partition of the testator's estate, between the three sons, made in 1786, a previous holding by them, as tenants in common, and the separate possession, under the partition, of D. continued from that time. It was held, that though when a tenancy in common is admitted, a parol partition,

JACKSON, *ex dem.* VANBEUREN AND OTHERS, *against* VOSBURGH.

THIS was an action of ejectment, for a certain piece of land called *The Island*, in the town of *Kinderhook*, in the county of *Columbia*. The cause was tried before Mr. Justice *Yates*, at the *Columbia* circuit, in *November*, 1811.

The plaintiff proved that the premises in question formerly belonged to *Johannis Van Deursen*, the elder, who occupied them until his death, in 1757. *Robert*, his eldest son, died, leaving six children, *Peter, Stephen, Laurence, Cynthia, Mary*, formerly the wife of *John Vanbeuren*, and *Christiana*, who married *John Boyd*, both of whom died, leaving four sons, *Robert, William, John* and *James*, who, with *Mary Vanbeuren*, are the lessors of the plaintiff. The three sons of *Johannis Van Deursen*, the elder, to wit, *Robert, Laurence*, and *John*, succeeded to the possession of their father's estate, of which *The Island* is a part, and which *John* afterwards occupied and improved alone.

The defendant produced the will of *Johannis Van Deursen*, dated the 11th *December*, 1757, by which he devised his real estate to his three sons, *Robert, Laurence*, and *John*, an undivided third part to each and to their heirs and assigns for ever. After his death, in 1757, his sons lived together in one house. After *John* married, the sons lived in separate rooms. *John* continued to live in the east room for several years, and then moved to the place where the defendant now lives, and continued to work on the old farm as usual. The sons built a mill after their father's death, which they attended alternately; but, after *John* married, they possessed the rest of the farm separately. *John* possessed the premises on the east side of the road, and *Robert* on the west side of the road.

*Cornelius Van Alen*, a witness for the plaintiff, testified that he knew the premises forty years ago, when they were possessed by the three brothers. The field west of the road was called the

followed by possession under it, will be valid; yet, where the whole right or title of the party setting up the tenancy in common and parol partition is denied, a parol partition and possession under it, will not be sufficient to transfer the title; that by waiving the will of A. the title was to be considered in B., as heir at law, and could not be devested by parol.

Though, after a possession by D. for so long a time, a tenancy in common might have been presumed; yet, by offering the will of A. and waiving it, the door was shut against the presumption of any other source of title.

NEW-YORK,
Oct. 1812.

JACKSON
v.
VOSBURGH.

back land. After *John* married, he possessed separately. *Laurence* and *Robert* did not divide, but took two thirds, and *John* one third. After the death of *Robert*, when all his children were present, one of them said to the witness, that they had settled with their uncle *John* and divided, and that *John* took *The Island*, and *Robert* and *Laurence* the land on the opposite side of the road, and over the creek; *John* had the south end of the *bush-land*, and the others the north end. *Eykebush* land was also divided, but how the witness could not recollect. This conversation took place in the presence of *Stephen* and *Laurence*, the sons of *Robert*, who claimed the share of their uncle *Laurence*.

*Elizabeth Van Deursen*, the widow of *John*, the brother of *Robert* and *Laurence*, testified, that before her marriage with *John*, which took place thirty years ago, the brothers lived together in the same house, and after her marriage, for about five years, *John* had the management of the farm, and *Robert* of the mills. The division was made in the lifetime of *Robert* and *Laurence*, and before *John* left the house. *John* was to have one third; and the land on the east side of the creek was laid down as one third of the farm, and called the *New Bowery*. On the west the whole was laid down as two thirds. *John* took one part, and *Robert* and *Laurence* the other parts. *Robert*, being the eldest, had his election, and he chose the north end of the bush land and *John* the south. *Robert* took the place where Mr. *Vanbeuren* lives; and *John* on the opposite of the road, called *Collie's Crawl*. *Robert* took the back land, and *John The Island*, being the premises in question. *Robert* took the north end of the *Kinderhook-fly*, and *John* the south; and the same division was made of *Eyke-bush*. The brothers, before this partition, divided the grain. This partition took place in *May*, 1785, or 1786, and *John* moved to the place where the defendant now lives. *John* occupied the lands allotted to him by the division, separately, until his death. The old homestead was not divided. On her cross examination, the witness testified, that this division took place between the brothers while standing in the door yard. They first made offers to each other. *Robert* asked *John* if he would take the east side of the creek, and *John* returned the question; but neither agreed to accept it. They agreed that the east side of the creek should be set off, as one third of the *Kinderhook* estate, and that the lands on the west side should be divided into two parts, of which *John* should have one. *Laurence* then lived with *Robert*. *John* and

*Laurence* came into the house, immediately after the division, and *John* stated the division, in the hearing of *Laurence,* who assented to it, as above mentioned. *Laurence* said, "Now we know where our land is, and we shall hereafter work separately." *Robert* and *Laurence* took possession according to the division, and always lived separately from *John.* The division was agreed to in the door yard; and the witness occasionally stopped at the door to hear the conversation.

Other witnesses confirmed the testimony of this witness, as to the separate possessions of the brothers, as long as they could remember, for twenty-four years, or more.

The defendant gave in evidence, an order of the judge of the court of probate, authorizing the administrators to sell the real estate of *John Van Deursen,* and the deed made in pursuance thereof to the defendant, dated the 24th *July,* 1801.

A deed was also produced in evidence from *John* and his wife, and the heirs of *Robert* and *Laurence,* to *Daniel Staats* and *Adam Van Alen,* for the mills, in which *John* warranted for one third and the other grantees for two thirds.

The plaintiff then offered to prove that *Johannis Van Deursen* the elder, was insane at the time of making his will; and that a year or two after the division spoken of by *Elizabeth Van Deursen, Robert* told *John* that he had no right under the will; and that *Staats* had made an application, long after the death of *Robert,* for a division of the lands on the east side of the creek; and offered also to show by parol, that he claimed by deed from *John Van Deursen;* but this evidence was objected to and overruled by the judge.

*Cynthia Van Deursen* was called as a witness for the plaintiff. Her evidence was objected to, but admitted by the judge. She was the daughter of *Robert,* and remembered the trial at *Claverack,* and that *John* called on her brothers and sisters soon after, and said he had been to *Claverack,* and that he and *Staats* had tried to get the lands on the east side of the creek divided. He asked if they would take away the lands their father had given to them; that it had now been proved that the will was good for nothing, and void. He said nothing about any previous division, and asked if they would give him a conveyance, to which they agreed. This was a short time before *John* died, and at the time the deeds were executed. Whether Mrs. *Boyd* was then dead or not, the witness did not recollect. She was not then present. She died

NEW-YORK,
Oct. 1812.

JACKSON
v.
VOSBURGH.

before her husband. On her cross examination, the witness said that *John* went into possession of *The Island* after his marriage. Before he moved, *Robert* and *Laurence* held together; *John* held possession separately, as stated by the other witnesses. Deeds were given to *John* according to the contract. *Laurence* died about twenty-five or twenty-six years ago, and from that time the possessions had been uninterrupted. The defendant purchased the back lot of the *Boyds*. He owned *The Island* and *Collies' Craw*.

The plaintiff again offered to prove the insanity of *Johannis Van Deursen* the elder, at the time of making the will, and to disprove the fact of acquiescence under it, to which the defendant's counsel objected. The judge decided that the defendant must either abandon the will altogether, and rely upon the division, or he should admit the evidence to impeach the validity of the will. The defendant's counsel then declared that they should rely upon the division merely.

The defendant produced two deeds, both dated the 18th *March,* 1797, one from *John Van Deursen* and wife to *Cynthia Van Deursen* and others; the other from *Cynthia Van Deursen* and others to *John Van Deursen;* and it appeared that the defendant was counsel for the heirs of *Robert Van Deursen,* on the hearing of *Staats* for a partition, and then produced, pursuant to a notice for that purpose, the deed from *Cynthia Van Deursen* and others, the heirs of *Robert,* to *John,* and which contained a covenant of warranty against all persons claiming under *Robert* or *Laurence.*

The judge charged the jury, that the plaintiff had, in the first instance, made out a clear right of recovery. That the defendant having elected to rely on the parol partition between the brothers, and not to claim under the will, the jury were not to be influenced by the will, further than its existence ought to be evidence of the probability of a division; that the only question for the jury to decide was, whether there had been a division made between the brothers; and if so, whether it was intended to be permanent, or whether for temporary purposes only; that if they believed that there had been no division made, or that it was for temporary purposes only, they ought to find for the plaintiff for two sixths of the whole premises; otherwise, for the defendant.

The jury found a verdict for the plaintiff, for two sixths of the premises.

A motion was made to set aside the verdict, and for a new trial.

*E. Williams*, for the defendant.   The acts of possession pro-
ved, down to the year in which the division was made, were those
of co-tenants, and are inconsistent with the idea that *Robert* claim-
ed as sole heir to his father.   The three sons of *Johannis* the el-
der, exercised joint acts of ownership.   The deed shows that
the *mill*, which was not divided, was held by them, as co-tenants,
in common, and they warranted as tenants in common.   This te-
nancy in common was confirmed, by the division which took place,
more than twenty years ago, since which time the property has
been held in severalty.   Here is a possession by the three sons,
as tenants in common, from the year 1757 until the division, and
subsequently, in severalty, for a period of more than 50 years.   A
will from the ancestor is, therefore, to be presumed ; or, if neces-
sary, a grant from the ancestor to the three sons may be presumed,
as *Robert*, the eldest son, acquiesced in the possession in common.*

A parol division of land, carried into effect, by possessions ta-
ken in severalty, according to the division, is valid, and sufficient
to sever the tenancy in common.†

The evidence is full and conclusive to the fact of a parol par-
tition.

Though, at the trial, on account of the allegation of the insanity
of the testator, the defendant, under the direction of the judge,
abandoned the will, yet he did not, thereby, waive the presump-
tion of law, arising from the facts in the case, of the existence of a
will or grant.

But whether there was a will, or not, is immaterial ; since there
was a partition made, to which *Robert* was a party, and to which
he assented ; for he is now estopped, by his own acts, from saying
that there was not a tenancy in common.   The defendant has
shown a partition in fact, and possessions according to it, for near
30 years.

Again, if *John* did not hold as tenant in common, he held tor-
tiously, and adversely to *Robert*, for more than 26 years ; so that
there was a descent cast which tolled the right of entry ; an ad-
verse possession sufficient to oust even a tenant in common.‡

Again, the evidence of *Cynthia Vandeursen* ought not to have
been admitted to prove the admission of the defendant.   Parol
evidence of a disclaimer of title to real property is inadmissible.§

*Van Buren* and *Foot*, contra.   The will of *Johannis Vandeur-*
*sen* was wholly abandoned at the trial, and the cause was stripped

*3 Johns. Cas.
295. ; Caines'
Rep. 383. 1
Caines' Cases
in Error, 1—
20.
† Jackson v.
Harder, 4
Johns. Rep.
202—212.

‡ Smith, ex
dem. Teller, v.
Burtis and
another, 6
Johns. Rep.
197.
§ Jackson, ex
dem. Van
Alen and
others, v. Vos-
burgh, 7 Johns.
Rep. 186.

of all colour of title. The only question was as to a parol partition. In order that a parol division should be valid, so as to conclude the rights of the parties, it must be a division of the land, or property, itself, and permanent, not a mere temporary separation of the possession, until a permanent division is made. Here was a valuable estate, said to be divided between three brothers, in an accidental conversation, at which no witness was present; the only evidence of it being the testimony of a person who, as she passed to and fro, casually heard the conversation between the parties。 No doubt a parol partition may be proved by parol. So it may also be disproved by parol; and the plaintiff proved that *John* applied to the other heirs for a division long after the alleged partition.

The will being abandoned, what evidence was there of a tenancy in common? To render a parol partition valid, a title in common must be shown. The only question related to a parol partition. It was a question of fact, on which the jury have decided, and their verdict ought not to be disturbed. The other points, suggested by the defendant's counsel, were not made at the trial, ·and are not, therefore, now to be discussed。

The testimony of *Cynthia Vandeursen* does not come within the rule laid down in *Jackson*, ex dem. *Van Alen*, v. *Vosburgh*. Her evidence went merely to explain a doubtful fact。 The confession of a party is the highest evidence against him; and though it cannot be admitted to transfer a title to land, yet it may be received to explain a doubt as to that title。

Again, after the party has produced a will, and then waived it as void and of no effect, the law will not presume a will; nor will the law presume a grant, when the party alleges that he holds under a will, not by grant。

*Van Vechten,* in reply, said, that the will was wholly abandoned; and if it is to be considered as out of the case for one purpose, it must be so for every purpose。 It cannot be used by the plaintiff to rebut the legal presumption of title arising from the long continued possession, and acquiescence of the parties。 Such a possession, acquiesced in for such a length of time, must be considered as grounded on title, the evidence of which is lost by lapse of time.

The *mill,* which was a part of the estate of *Johannis* the elder, was sold by all the parties, and the heirs of *Robert* warranted

NEWYORK,
Oct. 1812.

JACKSON
v.
VOSBURGH.

as to one third.   If *Robert* was the heir at law of *Johannis*, he was heir to the whole estate ; and how, then, do the heirs of *Robert* join in a deed for the mill, and warrant only as to one third ?

He dwelt on the facts in the case, to show an entire acquiescence by *Robert*, and his heirs, in the occupation in severalty by *John*, as owner.

*Per Curiam.*   *Johannis Vandeursen*, deceased, is admitted to be the source of title, as claimed by both parties.   His son *Robert*, under whom the lessors of the plaintiff derive title, was his heir at law ; and the defendant claims under *John*, a younger son of *Johannis*.   To establish his right, the defendant introduced the will of *Johannis*, and then went into proof to show that his three sons held and used the real estate, of which their father died seised, as tenants in common, until about the year 1786, when a parol partition was made between them, upon which the premises in question were allotted to *John*.   On the part of the plaintiff, proof was offered to show that *Johannis Vandeursen* was incapable of making a will.   This was objected to, but admitted by the judge, if the defendant relied upon the will to establish his title.   Upon this the defendant elected to abandon the will, and rely upon the right derived under the parol partition.   One of the grounds urged in support of the present motion is, that this will was improperly excluded.   There certainly can be no pretence for setting aside the verdict on that ground.   For, if the defendant set up this will as a part of his title, and meant to rely upon it to take away the right of the heir at law, it was surely competent for those claiming under the heir at law to show that the testator was incapable of making a will.   The only question before the jury was respecting the parol division ; and if this division was valid in law, it might be questionable, whether the verdict ought not to be set aside, as being against the weight of evidence.   There is no doubt but that, where the *title* is admitted to have been in common, a parol partition, followed up by *possession*, will be valid, and sufficient to sever the *possession*.   (4 *Johns. Rep.* 212.)   But where the whole right and title of the party, setting up such tenancy in common, is denied, and, in fact, abandoned, as in the present case, by laying out of view the will of *Johannis Vandeursen*, the parol partition will not operate as a transfer of title.   The will having been abandoned, the title was in *Robert*, as heir at law, and that could not be devested by parol.   The

possession in common was for such a length of time, that, perhaps, a title in common might have been presumed, had not the defendant shown the source from which he claimed to have derived it. But this source being the will of *Johannis Vandeursen*, and that having been abandoned, the door was shut against the presumption of any other title. No question as to adverse possession appears to have been submitted to the jury; and had there been, there is no ground to disturb the verdict on that account. The motion for a new trial must, accordingly, be denied.

Motion denied.