# Gachet v. McCall.

50 307
121 624

### Action for Recovery of Illegal Taxes and Fees paid.

1. *When action lies to recover back illegal taxes and fees paid.* — If the owner of lands, which have been advertised for sale for the non-payment of taxes, voluntarily proposes to the tax-collector, on the day appointed for the sale, that he will pay the taxes and fees as charged, if the tax-collector will postpone the sale until the next day; and on the next day, pursuant to this promise, the sale having been postponed, pays the amount in full, but declares at the time that he pays the fees under protest; this is a voluntary payment, and he cannot recover back any portion of the money.

2. *Advertisement of lands for sale, for non-payment of taxes.* — In advertising lands for sale for the non-payment of taxes, under the revenue law of 1868 (Sess. Acts 1868, pp. 297–325), it is the duty of the tax-collector to follow the description contained in the tax-assessor's books; and where the lands are described in the assessor's book by sections, the collector has no authority to advertise them by smaller subdivisions, even though he acts under a recommendation made by the grand jury to the probate judge.

3. *Forfeitures and double taxes.* — The imposition of double taxes and forfeitures, under the said revenue law of 1868, cannot be sustained, unless a strict compliance with the law is shown, putting the owner in default after demand or notice; the law, in this respect, is penal, and must be strictly construed.

4. *Levy on land for taxes.* — The said revenue law of 1868 does not authorize a levy on the lands of a delinquent tax-payer, and, consequently, no fee can be claimed by the assessor or collector for a levy.

APPEAL from the Circuit Court of Bullock.

Tried before the Hon. J. McCaleb Wiley.

This action was brought by James E. Gachet, against Solomon McCall, and was commenced on the 1st day of April, 1870. The facts of the case were thus stated by the chief justice : —

" Peters, C. J. — This is an action of *assumpsit*, brought to recover back money alleged to have been paid under protest, for taxes, penalties, and fees, improperly collected by the tax-collector. The evidence offered on the trial below is all set out in the bill of exceptions. In this, there does not seem to have been any conflict. It is, then, equivalent to a case agreed. On the case thus made, the court charged the jury, ' That if they believed the evidence, they must find for the plaintiff the amount received by the defendant for the tax-assessor's fees, after deducting therefrom the fees due the tax-assessor for making four assessments.' To this the defendant excepted, and then moved the court to charge the jury as follows : 1. ' That if they believe all the evidence in the cause, the plaintiff is not entitled to recover in respect to anything, beyond the assessor's fees, which the preceding charge authorized him to recover, and interest from the time the fees of the assessor were paid by the plaintiff.' 2. ' If the jury believe all the evidence in the cause, they ought to find for the defendant.' These charges were refused, and the defendant again excepted.

[Gachet *v.* McCall.]

" The testimony shows that the plaintiff was an inhabitant of the county of Bullock in this State during the year 1869, when the tax in controversy was assessed and collected, and that the defendant was the tax-collector of said county during the same year and the year following. It also appears that certain lands in said county in the said year 1869 were assessed to an ' Owner unknown,' which lands were described in the assessor's list as ' section 18, of township 14, in range 24, containing 640 acres,' and ' section 19, of township 14, in range 24, containing 640 acres,' and ' section 30, of township 14, in range 24, containing 400 acres.' There were no values proven to have been affixed to these tracts thus described. The taxes assessed on these lands were not paid, and they were advertised by the tax-collector for sale, as the lands of a delinquent tax-payer. This advertisement was made in a proper newspaper, and in proper form, except as to the description of the lands; which, it is contended by the plaintiff, were improperly made. These lands were described in the advertisement, not in tracts of whole sections, as they had been assessed, but in tracts of subdivisions of a section each, which made, instead of three divisions by sections, sixteen subdivisions of forty acres each in each section ; that is, forty-eight tracts, of forty acres each, in all. Of these lands, the plaintiff was the owner of said sections 18 and 19, and the north half of the northeast quarter, and the north half of the northwest quarter of section 30. On these lands, thus belonging to the plaintiff, he paid the tax-collector, for state and county taxes, $316.80, which sum included also ' interest at ten per cent. and penalties, forfeitures, and costs ; and fees, in said sum of $316.80, were included on state and county taxes, as upon an assessment for a double tax: also, the sum of $36.00, for making thirty-six levies; the sum of $36.00, for advertising said lands, and the sum of $27.00, for tax-assesssor's fees for assessing said lands.' All which costs, fees, and taxes, ' were demanded by the defendant, as such tax-collector, to be paid by the plaintiff under protest, as is hereinafter more fully stated and explained.' There was no proof of any 'levy on the personal property, or on said lands, or of any notice to plaintiff under section 34 of the revenue law of December 31, 1868. It was also shown that the plaintiff lived in a few miles from the court-house of the county, where the lands were advertised to be sold, and was a subscriber to, and a reader of the paper in which said advertisement was made, that said lands would be sold for the taxes unless paid before the sale.

" On the day appointed for the sale under said advertisement, the plaintiff went to the defendant, still being tax-collector of said county, and ' procured him to withhold said

[Gachet *v.* McCall.]

lands of plaintiff from sale, by promising and agreeing to pay the defendant the whole amount of the taxes, dues, costs, and fees, &c., which appeared from said advertisement to be upon said lands of plaintiff, if the defendant would indulge plaintiff till next day.' And on said next day, ' under said promise and agreement,' the plaintiff did pay said sum of $316.80. ' And said plaintiff, at the time of said payment, but not before, did protest against the payment of the fees, but not against the payment of the state and county taxes included in said sum of $316.80.' ' Soon thereafter, and without notice of any claim by said plaintiff to said state and county taxes, the defendant paid the same over properly to the proper state and county officers.' The regular fees for advertising lands, so advertised by tax-collectors, was *one dollar* for each tract, whether it was described by sections, or by subdivisions in less than a section; that is, if the description was by subdivisions, each subdivision was charged as one tract; and if by sections, the section only was charged as a tract. The sections, and the subdivisions of sections, were each charged at the same price. The advertisement was in the usual form, save said descriptions."

The above statement of facts is correct, with this exception : the first charge asked by the defendant, as above set out, *was given by the court,* and an exception to it was reserved by the *plaintiff,* who is the appellant in this court; and this charge is the only error assigned by him.

STONE & CLOPTON, for the appellant.

S. F. RICE, J. N. ARRINGTON, and D. M. SEALS, *contra.*

PETERS, C. J. — [After stating the facts as above.]   1. It is unnecessary to go into any question arising out of the improper levy or collection of the taxes assessed upon the plaintiff's lands, or the interest or penalties thereon, as the plaintiff paid these without protest or objection. They were, therefore, paid willingly, with a full knowledge of all the facts on the part of the plaintiff. Such a payment to the tax-collector, who does not receive or hold the money thus obtained for his own use, does not subject him to a recovery, after he has paid the taxes, interest, and penalties to the county and state officers entitled to receive them, and before he is notified by the claimant not to do so. *Hall* v. *Shultz,* 4 John. 240; *Hearsey* v. *Pruyin,* 7 John. 179; *Crutchfield* v. *Wood,* 16 Ala. 702; 1 Chitt. Pl. (100) *et seq.* The tax-collector is but an agent of the government. There is no pretence that he acted in bad faith, and in wilful disregard of his duty. The county and the State have received the sums which were collected for their use.

[Gachet *v.* McCall.]

In this they have adopted their agent's acts. It is to these principals that the plaintiff should resort for redress, if they have possession of his money without authority of law. It is not to be presumed that the State or the county will hesitate to do what the laws of the land command should be done. Very clearly, the tax-collector could not use the power of his office to extort the payment of illegal taxes, or illegal fees, for himself, or for the tax-collector. *Riply* v. *Gelson*, 9 John. 201; *Clinton* v. *Strong*, 9 John. 270; *Prior* v. *Craig*, 5 Serg. & R. 48; 34 Ala. 407. But, where he has acted in good faith, and on a construction of a statute that admits of doubt as to the proper fees to be charged and collected, not for himself, but for the assessor, the tax-payer may waive his right to withhold an improper fee for the assessor, and promise and agree to pay it. The proof shows that there was such a promise and agreement in this case, and that the payment made to the tax-collector was so made " under " this promise and agreement. If this was so, and so the proof states it, then the compulsion was the voluntary promise and agreement of the plaintiff, and not the force of official authority exerted by the tax-collector in violation of the law. The plaintiff paid the fees now objected to, not because he acted *under* illegal compulsion, and unwillingly paid them, but because he had agreed to pay, and acted *under* his agreement. The protest at the time of payment cannot, in such a case, be construed to contradict the agreement *under* which the plaintiff admits he made the payment. It merely meant, that if the plaintiff had not made the promise, he would not have acted *under* it. This gives some force to both these expressions, without the one being held to contradict the other. The jury, then, had a right to look to the agreement under which the fees were paid, as evidence of a gratuitous and voluntary payment. If it was intended as a voluntary payment, then the plaintiff could not recover the money thus paid in this form of action. 6 T. R. 681; 3 Taunt. 264; 1 Camp. 124; 34 Ala. 407, *supra.* There is no evidence that the promise and agreement, *under* which the fees were paid, were extorted. They were wholly voluntary, and of the plaintiff's own proposal. It would be denying all force to this portion of the proof, to say that the promise and agreement were made under compulsion, and that the payment of the fees was not made *under* them.

2. In an advertisement of notice of the sale of lands for a failure to pay taxes, the description of the lands to be sold by the tax-collector, under the act of December 31, 1868, entitled " An act to establish revenue laws for the State of Alabama," should be made as near as possible in the manner directed by that law. " It is required that such advertisement shall state

[Gachet v. McCall.]

the time and place of the sale, and contain a *description* of the several *parcels* of real property to be sold, *as the same are recorded on the tax-list;* the amount of the tax for each year; and the names of the owners when known, or persons, if any, to whom taxed. The collector is directed to charge and collect, in addition, interest, forfeiture, and costs, *on each tract,* (and) the price of advertising the same for sale." Pamph. Acts 1868, pp. 297, 317, § 63. It is evident from this, that the tax-collector should, as a general rule, use the same descriptions of the lands in his advertisement, that are found "*recorded on the tax-list*" made by the assessor. If the tract is as large as an entire section, in one body, and all of equal value, the description should be by section, township, and range, with the proper numbers affixed to each of these particulars. In such case, the sectional description is enough. But, as the sections are differently numbered, each section should be included in a tract by itself, and divided only when the parts are differently valued; those parts of the same values being included in the same parcel. The divisions and subdivisions of the section should be described in like manner. Pamph. Acts 1868, *supra*, p. 311, §§ 37, 38; Ib. p. 310, § 33; Ib. p. 306, § 19. But it is sufficient if the tax-collector follows the descriptions entered in his list and recorded by the assessor.

Here, the proof shows that the assessment, as entered of record by the assessor, was by the section only, and not by the subdivision of the section. There were three sections, and three entries on the book of the assessment. The advertisement should have followed this manner of description. Then, there should have been but three assessment fees allowed the assessor, and a fee for advertising three tracts, and no more. Then, the charges for these services demanded and paid were too high and illegal. But, for the reasons above shown, the plaintiff waived his right to object to them, and consented to pay them "under his promise and agreement" shown in the proof as above. It follows from the above and foregoing, that the descriptions of the lands in the tax-collector's advertisement of notice of sale for unpaid taxes should follow those used in the recorded list of the assessment. These descriptions must be the guides of the tax-collector. He has no warrant to increase the costs beyond this, either for fees to the assessor, or to the newspaper publisher or owner, for the advertisement. This is the limit which the law prescribes; and as costs are penal, it cannot be enlarged by construction. The recommendation of the grand jury to the judge of probate, to have lists of the taxable lands of the county made out in subdivisions of the sections for the convenience of the people of the county, though very proper in itself, can have no influence in this case, except to aid in show-

ing that the tax-collector did not intend to act in bad faith in the manner adopted by him in describing the lands in his advertisement. This action of the authorities of the county could not change the duties of the tax-collector, or give him authority to depart from the requirements of the revenue law under which he was acting.

3. No double taxes or forfeitures can be imposed by the assessor, and collected by the tax-collector, except in strict conformity with the law. Such laws are penal, and must be strictly construed. The language of the statute is this: "SEC. 35. *Be it enacted*, that having failed to procure from any delinquent a list of taxable property, before the first day of June, the assessor shall ascertain, from inquiry or otherwise, the property and other items of taxation, upon which such person is liable to be taxed, to the best of his information and judgment, and assess a double tax upon the same." Pamph. Act 1868, p. 310, § 35. The proof does not show that any such steps were taken to fix the tax in this case at double rates, as above presented. Nor does it show, indeed, that any double tax was levied, but only that the lands in controversy were assessed and entered on the assessor's list of assessments to " owner unknown." A demand or notice should be given the tax-payer, as required by section 34 of the act before he is in default and liable to pay double taxes. In this case this was not done. Act, §§ 34, 35; *Smith* v. *State*, 43 Ala. 344. But this tax, whatever it may be, was paid without objection, and upon consent of the tax-payer, and cannot now be reclaimed.

4. There is no authority given in the act of December 31, 1868, above quoted, for a levy on the land of the delinquent tax-payer, and consequently, no fee for such a levy. This act directs, "that where no personal property can be found, with reasonable search, the tax-collector shall proceed against the real estate of any delinquent tax-payer in the manner hereinafter provided." Acts 1868, p. 315, § 54. The provisions of the act thus referred to require the tax-collector, after advertising the lands of delinquent tax-payers, as prescribed in said act, to sell the same on the first Monday in March in each year, beginning in 1869, at the court-house of the county, or, if there be no court-house, at the office of the probate judge. This is done without any levy. Acts 1868, p. 317, §§ 62, 63, 64, 65 *et seq.* Then, it was illegal to charge any fee for levies in such a case as this. But, for the reasons above shown, the plaintiff's right to recover such fees was waived by his promise and agreement to pay them, as has already been declared.

There is a consent on the record that the appellee may assign errors, should he choose to do so. But no such errors have been assigned; and as there are no errors assigned by the

appellant, of which he has any right to complain, there must be an affirmance of the judgment of the court below.

The judgment of the court below is affirmed at appellant's costs.