# Raisler *v.* Mayor and Council of Athens.

*Action against Municipal Corporation, to recover Taxes collected under Unconstitutional Law.*

1. *When action lies against municipal corporation, to recover illegal taxes.*—An action lies against a municipal corporation, to recover back taxes illegally assessed and collected under an unconstitutional law ; but, to support such an action, the plaintiff must show, not only that the tax is illegal and void, and

that the money has been paid over to the corporation by the collecting officer, but also that it was paid under compulsion, or its legal equivalent.

2. *Same; whether payment is voluntary or compulsory.*—A payment by the tax-payer, whether made to procure the release of a seizure already made under a tax-warrant, or to prevent a seizure threatened and immediately apprehended, accompanied with a protest, and notice of an intention to sue to recover back the money, is compulsory, and the money may be recovered; but a payment before demand made by the collector, or before any threat or step on his part indicating an intention to levy, is voluntary, though accompanied with a protest and notice of an intention to sue.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. W. B. WOOD.

This action was brought by Charles W. Raisler, against the corporate authorities of the town of Athens; and was commenced before a justice of the peace, on the 11th March, 1880. On appeal to the Circuit Court, the plaintiff there filed a complaint, in which he claimed $19.33, alleged to have been illegally assessed and collected by the defendant, "as a special school-house tax for the year 1879," and to have been paid by the plaintiff under protest and legal compulsion, and to avoid a seizure and sale of his property by the collector. The defendant pleaded "the general issue, in short by consent, with leave to give any special matter in evidence"; and the cause was heard and decided by the court, without the intervention of a jury.

"On the trial," as the bill of exceptions states, "it was admitted by the defendant that its tax-collector, James H. Mingea, collected of the plaintiff, on the 16th January, 1880, $19.33, as a special school-house tax, assessed on his property by the defendant, and paid the same over to said defendant on the 1st March, 1880; and that the payment of said tax by the plaintiff was accompanied by the presentation to said collector of a written statement of protest," which is set out, as follows: "If the $19.33 now demanded of me, as a tax levied by the corporation of Athens, has been assessed as the school-house tax, and under an act authorizing the mayor and council of the town of Athens to assess and collect a special tax to build a school-house, approved Feb. 13th, 1879; this I protest against as illegal, but, to avoid seizure and sale of my property, I pay it, with notice that I will test the validity of this part of the assessment, and sue to recover the money back, if the tax is found to be illegal." This was signed by the plaintiff, addressed to the tax-collector, and by him indorsed, "Service acknowledged this 16th January."

"The plaintiff testified that, to the best of his recollection, the special school-house tax, together with his other corporation taxes, had been demanded of him several times by said collector, after the 1st December, 1879; that he had offered to pay, and made a tender of all his corporation taxes, except

said special school-house tax, which said collector refused to receive ; that on one occasion said collector informed him that, after a given time, he would proceed to enforce payment of his taxes by sale of property ; that he told said collector, on the 16th January, 1880, that he would pay said special school-house tax under protest, and handed him said written statement of protest, and advised him to consult the mayor before acting in the matter ; that the tax-collector left his store with said written protest, and shortly returned, and stated that he was instructed to collect the tax and receive it under said protest." One Crawford, who was a clerk in the plaintiff's store, " testified that he had several times heard plaintiff and the tax-collector talking in the store about plaintiff's corporation taxes, but did not remember what they said, or which one of them commenced the conversations; that he never heard the collector make demand of the taxes." James H. Mingea, the tax-collector, " testified that, on the 16th January, 1880, after the delivery to him of said written protest, he collected for the plaintiff the sum of $19.33, as the special school-house tax assessed by the corporation on the plaintiff's property, and paid the same over to the defendant before the institution of this suit; that he had not demanded this tax of the plaintiff ; that he was frequently in plaintiff's store, and said special tax had been several times mentioned between them, but the conversations were always brought up by plaintiff ; that he had no recollection of its being first mentioned by himself to plaintiff ; that between the 1st and 16th January, 1880, in answer to a question by plaintiff, he stated that he would, after the end of the month, proceed to enforce payment of all the town taxes that were unpaid."

This was all the evidence relating to the circumstances under which the money was paid to the collector, or tending to show whether the payment was voluntary or compulsory. The law under which the special tax was assessed (and which may be found in the Session Acts 1878–9, p. 453), and the proceedings of the corporate authorities in the matter of the assessment, were read in evidence ; but they are not material to an understanding of the case, as here presented. An ordinance of the corporation was also read in evidence, which was of force in 1879–80, authorizing and requiring the tax-collector "to proceed, on and after the first day in December in each year, after giving thirty days' notice by advertisement in a newspaper published in the town of Athens, to sell all property, real or personal, upon which taxes are due and unpaid ;" and the charter of the town, approved March 8th, 1871, which provides, among other things, that all taxes, assessed or levied under the authority conferred by it, "shall

have the force and effect of a judgment and execution at law, and shall constitute a lien on the property assessed," &c.

On all the evidence adduced, the court found the issue in favor of the defendant, and rendered judgment for costs against the plaintiff; and this judgment and decision, to which the plaintiff excepted, is now assigned as error.

CABANISS & WARD, for appellant.—The ordinance of the corporation authorized the collector to seize and sell property after the 1st December; and it was not necessary that the plaintiff should wait until his property was actually seized. The officer being authorized to seize and sell, the tax-payer is justified in supposing that he will do so; and if he pays the money under protest, with notice of his intention to contest the legality of the tax, as here, he may recover it by action.—Cooley on Taxation, 568; *Town Council v. Burnett,* 34 Ala. 407. "Taxes illegally assessed and paid may always be recovered back, if the collector understands from the payer that the taxes are regarded as illegal, and that suit will be instituted to compel the refunding of them."—*Erskine v. Van Arsdale,* 15 Wallace, 77.

McCLELLAN & McCLELLAN, *contra.*—Under the facts disclosed by the record, the payment was voluntary, and the money can not be recovered back.—1 Brickell's Digest, 39, § 301, and cases there cited; also, Cooley on Taxation, 565; 2 Dillon on Mun. Corp. 751; 50 Ala. 307; 61 Ala. 560; 1 U. S. Dig. N. S. 489, § 9; 2 *Ib.* 477, §§ 13, 14; 3 *Ib,* 449, § 9; 9 *Ib.* 506, §§ 13, 19, 20. A mere payment under protest, when there has been no actual levy or seizure, and none is imminent or threatened, is not made under legal compulsion, and the money can not be recovered back.—Cooley on Taxation, 565; 2 Dillon, M. C. 751; 16 Kansas, 587; 59 Tenn. 453; 5 Otto, U. S. 210; 58 Indiana, 581; 13 Gray, Mass. 476; 46 Cal. 589; 46 Indiana, 552; 115 Mass. 367; 8 Kansas, 431; 34 Mich. 170; 5 Cush. 115; 51 Barbour, 159; 44 Mo. 436; 4 Gill, 425; 5 Gill, 244; 31 Penn, 73; 8 U. S. Dig. (N. S.) 543, § 25; 7 *Ib.* 557, § 13; 6 *Ib.* 498, §§ 13–16; 5 *Ib.* 515, § 9; 4 *Ib.* 462, § 15.

SOMERVILLE, J.—The action of *assumpsit* will properly lie to recover back from a municipal corporation, or county, taxes illegally assessed and collected under an unconstitutional law.—*Wiley v. Parmer,* 14 Ala. 627. To support a recovery, however, the plaintiff must not only show the tax in question to be illegal and void, as opposed to being merely irregular, but that it has been paid over by the collector, and

received to the use of the municipality or county which is sued; and that it was paid "under *compulsion*, or the legal equivalent."—Cooley on Taxation, 565.

It is a settled principle of law generally, in this State, that money *voluntarily* paid, through ignorance or mistake of law, with a full knowledge of all the facts, can not be recovered by action in the courts.—*Town Council of Cahaba v. Burnett*, 34 Ala. 40; 1 Brick. Dig. p. 39, § 301. What is a voluntary payment, in the case of taxes, is not always so clear. But it must be made under circumstances tantamount to legal compulsion—either to release a seizure already made under a tax-warrant, or to prevent one which is immediately apprehended. If a demand is made by the collecting officer, accompanied by a threat to levy for sale in case of refusal, or any equivalent expression of intention, and a payment made under protest, with notice that suit will be instituted to recover back the taxes thus paid, we think this is sufficient to show that the payment was involuntary, as being under compulsion. It is not necessary to await an actual seizure.—Cooley on Taxation, 568–9; *Erskine v. Van Arsdale*, 15 Wall. 75; *Gachet v. McCall*, 50 Ala. 307; 2 Dillon Mun. Cor. 751.

But any payment made by the tax-payer before *demand* made by the collector, or before any threat or step on his part indicating an intention to levy under the warrant, is *voluntary*, within the meaning the law, and is not under compulsion.—Cooley on Tax. 569, *note* 3, and cases cited; *Union Bank v. New York*, 51 Barb. (N. Y.) 159.

The amount claimed in this case being less than the sum of twenty dollars, the cause was tried by the court below, without the intervention of a jury, as provided by statute in all cases of appeal from justices of the peace to the Circuit Court.—Code of 1876, § 3122. The evidence is conflicting; and the circuit judge having had the advantage of hearing the witnesses on oral examination, we are not prepared to say that his judgment, when tested by the above principles, is erroneous. And the payment being held to be voluntary, the alleged unconstitutionality of the law, and questions as to the irregularity of the assessment, become immaterial.—Cooley on Tax. 565.

Affirmed.