H. M. LOUD & SONS LUMBER CO. *v.* TOWNSHIP OF VIENNA.

TAXES—LEVY AND SALE—VOLUNTARY PAYMENT.

> Where, upon a sale of property under a tax levy, the owner appears by an agent, who, without protest, takes part in the bidding, procures the property to be struck off to him, and, upon the representation that he has not the required funds with him, induces the treasurer to accompany him to the owner's office, where payment is made, such payment will be construed to be voluntary, even though the treasurer is required to give a receipt reciting that the money is "paid under protest after levy."

Error to Montmorency; Kelley, J. Submitted May 10, 1899. Decided June 5, 1899.

*Assumpsit* by the H. M. Loud & Sons Lumber Company against the township of Vienna to recover taxes alleged to have been paid under protest. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Main J. Connine*, for appellant.

*James Francis*, for appellee.

MOORE, J. The plaintiff sued the defendant to recover taxes paid by it to the treasurer of the defendant, claiming the assessment was void, and that the taxes were paid under protest. The circuit judge directed the jury to return a verdict for the defendant. The case is appealed here by the plaintiff.

The plaintiff was the owner of the lands upon which the taxes were assessed. As the taxes were not paid, the treasurer made a levy upon logs belonging to plaintiff, and advertised them for sale on the 5th of March, at which time they were offered for sale to the highest bidder. Mr. Park, the superintendent of the plaintiff, ap-

peared in its behalf, and bid upon the logs. A man by
the name of Stevenson also bid. After several bids were
made, as Mr. Park was the highest bidder, the logs were
struck off to him. Mr. Park's version, upon the cross-
examination, of what occurred, is as follows:

"I saw the notice that he had up for the sale. I think
the date of the sale was March 5th. He offered the logs
at that time to bidders. I don't know who the first bidder
was, out think it was a man from Lewiston, by the name
of Stevenson. I don't think any offer was made by the
thousand, but an offer by the bulk. I have forgotten how
much the first bid was. There was a certain amount
offered for the logs. There were several bids. The next
bid was a higher bid made by me. There was a bid made
over me, and I bid over that again. I could not say how
many bids there were made altogether. I made the
highest bid made there that day. The logs were struck
down to me as the highest bidder at that sale. I bought
the logs in at that sale of the township treasurer. I did
not pay him the money there for the logs I had bid in.
The reason why I did not pay him the money there was
because I wanted to counsel the members of the firm at
Au Sable first. I had the money there to pay, but I did
not want to pay until I heard from them. I paid for the
logs on the 6th of March. I was bidding them in for the
plaintiff. I think the amount of the bid was somewhere
near the amount of the taxes. I think it was a trifle
over.

"*Q.* When Mr. Jones went down with you, he went
down to get pay for the logs that he had sold to you on
that 5th day of March?

"*A.* He went down to get pay for his taxes,—the
amount of his taxes. * * * The sale was temporarily
suspended at my request, until I could get the money and
pay the taxes."

Mr. Jones' version of the transaction is as follows:

"Mr. Park made the last bid, and there were no more
bids made after he made the bid, and it was struck off to
him. The first bid made by Mr. Park did not come up to
the amount of the tax. After the bidding was closed,
there was something said about that he did not have the
money to pay the bid that he had made on the logs, and
he wanted I should go to Au Sable, and he would pay the

money there. He said he did not have the money there to pay it, and, of course, I said then it would go to the next highest bidder, if he could not pay it. And he went on and said, if I would go down to Au Sable with him, he would get the money there, and pay it. I went. After we got there, they looked over the tax, and made out a receipt and a check, and presented them to me—the check and the receipt—to sign; and I said I did not think I could take this tax under protest. I got the money, and came home."

On cross-examination, witness, when shown the tax re-. ceipt, testified:

"That is my signature on the back of the tax receipt. When I signed that there, I think the writing, 'Paid under protest after levy,' was there immediately above my signature. I received the money on the 6th of March."

No written protest specifying the grounds of protest was made by the plaintiff, and the record does not disclose any statement was made to the treasurer why the plaintiff claimed the right to pay the taxes under protest. In *Hinds* v. *Township of Belvidere*, 107 Mich. 664, it was held, in an action to recover taxes paid under protest, no showing can be made or recovery had upon any ground not named in the protest. This transaction is not a very creditable one to the plaintiff. Its representative appeared at the sale, and without protest took part in the bidding, and bid higher than another; and prevented the property from being sold to him. When the property was sold, it was represented that if the treasurer would go to the office of the plaintiff, which was not in the township where the sale was made, the amount of the bid would be paid to him. When he arrived there, an attempt was made by the plaintiff not to carry out the arrangement which induced the treasurer to be there, but to place him at a disadvantage.

The case is quite like that of *Gachet* v. *McCall*, 50 Ala. 307, where the owner appeared at the sale, and voluntarily promised the collector, if he would postpone the sale until

the next day, he would pay the taxes and fees. The sale was postponed, and on the next day, pursuant to the promise, the owner paid the amount in full, but declared he paid the fees under protest. It was held this was a voluntary payment, and that no portion of the money could be recovered back.

Judgment is affirmed.

The other Justices concurred.