# DECEMBER, 1931

## MOSES JONES v. J. R. WILLIAMS, TAX COLLECTOR OF TRAVIS COUNTY.

No. 6051.  Decided December 23, 1931.
(45 S. W., 2d Series, 130.)

*Ocie Speer, Dan Moody, A. E. Wood,* all of Austin, *Elbert M. Barron,* of Sherman, *Thomas B Love,* of Dallas, *Vernon Lemens,* of Glen Rose, *Chas. S. Gainer,* of Bryan, and *Ben G. Oneal,* of Wichita Falls, for appellant.

The existence of a condition amounting to a case "of public calamity" is exclusively for the Legislature's determination, and the courts have no power to review or revise its judgment.

The great public calamity which will authorize the Legislature grant of aid through the releasing of tax penalties and interest, is not the technical "Act of God," but is any prevailing, extraordinary condition, from whatever cause, that so affects the public in an economic or financial condition as to deserve public aid. Van Kleeck v. Ranier, 156 Pac., 1108; Brown v. State, 106 Pac., 975; Guthrie Natl. Bank v. Guthrie, 173 U. S., 528, 43 L. Ed., 796.

The act in controversy is valid, unless it clearly appears to be forbidden by some provision of the Constitution.

The Legislature has constitutional authority, in promoting the welfare, advancement and prosperity of her citizens to enact the emergency measure under consideration. Lytle v. Halff & Bros., 75 Texas, 132, 12 S. W., 610; Day Land & Cattle Co. v. State, 4 S. W., 874; Brown v. City of Galveston, 75 S. W., 488; City of Aransas Pass v. Keeling, 247 S. W., 819; State ex rel. Pierce v. Coos County, 115 Ore., 300, 23 Pac., 678.

Section 55 of article III of the Constitution, declaring "The Legislature shall have no power to release or extinguish or to authorize the releasing or extinguishing in whole or in part, the

indebtedness, liability or obligation of any incorporation or individual, to this state, or to any county or other municipal corporation therein," has no forbidding effect, since such provision is intended to prevent only the gratuitous release of such an indebtedness, liability or obligation, and the same has no reference to the granting of aid in cases of public calamity elsewhere in the Constitution especially provided for or recognized. Martin v. Hidalgo County (Texas Civ. App.), 271 S. W., 436; International & G. N. Ry. Co. v. State, 75 Texas, 356, 12 S. W., 685.

*Connie C. Renfro, Roy C. Ledbetter* and *Chas. S. McCombs,* all of Dallas, and *R. C. Walker,* of Austin, as amici curiae.

*James V. Allred,* Attorney General, *Bruce W. Bryant, R. W. Yarborough* and *Scott Gaines,* Assistant Attorneys General, for appellee.

The interest and penalties accrued are a special lien on land owned by the delinquents under section 15 of article 8 of the Constitution, and the attempted release of the same by the Legislature is in conflict with that provision of the Constitution and is therefore null and void. Constitution, art. III, sec. 55; Constitution, art. VIII, sec. 10, sec. 15; Ollivier v. City of Houston, 93 Texas, 201, 54 S. W., 943; City of San Antonio v. Toepperwein, 104 Texas, 43, 133 S. W., 416; State v. Pioneer Oil & Refining Co., 292 S. W., 869 (Com. Apps.); Bell County v. Hines, Director General of Railroads, 219 S. W., 556; C. B. Carswell & Co. v. Habberzettle, 87 S. W., 911; State v. H. & T. C. Ry. Co., 209 S. W., 820; Opinions of Attorney General, 1920-22, p. 167; Opinions of Attorney General, 1920-22, p. 588; Opinions of Attorney General, 1922-24, p. 479; Opinions of Attorney General, 1928-30, p. 260; Opinion of Attorney General No. 2853, dated June 11, 1931; Letter opinion of Attorney General Allred to Senator T. J. Holbrook, dated Feb. 9, 1931, recorded in Letter Book No. 300Q, p. 633.

The world-wide economic crisis stated in the act to be a calamity within the meaning of the Constitution is not such in fact. The term "great public calamity" used in the Constitution, and on account of which taxes may be released to any particular county, city, or town, does not include an economic cycle of price changes with its attendant successive inflation and deflation of commodity prices. Constitution, art. 11, sec. 8; Constitution of 1845, art. 7, sec. 27; Constitution of 1861, art. 7, sec. 27; Constitution of 1866, art. 7, sec. 27; Constitution of 1869, art. 12, sec. 19; Debates in Texas Constitutional Conven-

tion of 1875—McKay, pp. 250 to 255; Journal of Constitutional Convention of 1875, pp. 240, 368, 379, 404, 423, 485, 495, 536, 694 and 791; 6 Gammel's Laws, 524, 578, 611, 639, 659, 814 8 Gammel's Laws, 1294, 1295, 1296; 9 Gammel's Laws, 117, 291; 10 Gammel's Laws, 599, 1441; State v. H. & T. C. Ry. Co., 209 S. W., 820; Opinions of Attorney General, 1926-28, p. 302; Miller—A Financial History of Texas; Texas Almanac, 1931.

The declaration of the Legislature, embodied in House Bill No. 80, that the law in question is constitutional is not binding on the courts. The Supreme Court, as the final interpreter of the Constitution, will determine for itself whether or not the act in question is in fact in conflict with any provision of the Constitution. Slater v. Ellis Co. Levee Improvement Dist. No. 9, 36 S. W. (2d) 1014; I. & G. N. Ry. Co. v. State, 75 Texas, 356; Martin v. Hidalgo County, 271 S. W., 436; State v. H. & T. C. Ry. Co., 209 S. W., 820; Macallen v. Massachusetts, 279 U. S., 620, 49 Sup. Ct., 432, 73 Law Ed., 874; Opinions of Attorney General, 1926-28, p. 302; Aberdeen Savings & Loan Assn. v. Chase, 289 Pac. 536; Ex parte Higgins, 195 Pac. 740 (Cal. Apps.); Robbins v. Kadyk, 312 Ill., 290, 143 N. E., 863; Person v. Bd. State Tax Commrs., 184 N. C., 499, 115 S. E., 336; Marion Foundry Co. v. Landes, 112 Ohio St., 166, 147 N. E., 302; Frazier v. Lindsey, 162 Tenn., 288, 36 S. W. (2d) 436; Redfield v. Fisher, 292 Pac., 813; Moore v. Bd. of Directors, 98 Ark., 113, 135 S. W., 819.

Penalties and interest on an ad valorem tax is "liability" within the meaning of section 55, article 3 of the State Constitution, and is a part of the tax, an "addition" to the tax. Sanderson v. Bateman, 253 Pac., 1100; Louisville Car, Wheel & Railway Supply Co. v. City of Louisville, 146 Ky., 573, 142 S. W., 1043; C. B. Carswell & Co. v. Hobberzettle, 99 Texas, 1, 86 S. W., 738; San Antonio v. Topperwein, 104 Texas, 43, 133 S. W., 416.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case is pending in the Supreme Court on certified question from the Court of Civil Appeals for the Third District. The only question involved is the constitutionality of chapter 18, Acts of the Second Called Session of the Forty-second Legislature.

■ For many years the attorney general's department has ruled that there was no constitutional basis for the enactment of measures of this character, except section 10 of article 8,

authorizing the release of taxes in cases of great public calamity, and the present attorney general, in keeping with the established policy of the department, has followed that rule. However, when a controversy finally reaches the courts for determination, the opinions of the attorneys general, rendered in due course, while entitled to careful consideration by the courts, and quite generally regarded as highly persuasive, are not binding on the judiciary, and it is our duty now to enter upon an independent inquiry as to the validity of the act before us.

In the preamble to the act here involved, the Legislature, after referring to the condition brought about by the present "world-wide economic crisis," declares that "such condition constitutes a calamity as the same is defined in the Constitution," that it was "the legislative intent that such condition does constitute a public calamity." Section 1 of the act reads:

"Section 1. That all interest and penalties accrued and as now fixed by law, on all State, County, Special School, School District, Road District, Levee Improvement District, and Irrigation District taxes and taxes of other defined subdivisions of the State, other than incorporated cities and towns, delinquent up to and including October 20, 1931, shall be, and the same are hereby released, provided said taxes are paid on or before January 31, 1932."

We will first discuss the question as to whether or not this law may be sustained under section 10, article 8, of the Constitution, which reads:

"The Legislature shall have no power to release the inhabitants of, or property in, any county, city or town, from the payment of taxes levied for State or county purposes, unless in case of great public calamity in any such county, city or town, when such release may be made by a vote of two-thirds of each House of the Legislature."

This section was incorporated in the Constitution of 1876, and remains in the organic law unamended. It is the section which the Legislature was of the opinion warranted the enactment of the measure before us, and authorizes the release of taxes *"levied for State or county purposes," "in case of great public calamity in any such county, city or town."*

■ Exemptions from taxation are regarded not only as in derogation of sovereign authority, but of *common right* as well. They must be strictly construed, and not extended beyond the express requirements of the language used, not only as to the meaning of statutes granting exemptions, but as to the

power of the Legislature to enact them. Cooley on Taxation (4th ed.), vol. 2, sec. 672; Yazoo & M. V. R. Co. v. Thomas, 132 U. S., 174; Berryman v. Trustees, 222 U. S., 334, 350; City of Dallas v. Cochran, 166 S. W., 32.

■ As stated, the Legislature was of the opinion that the present industrial depression was "a great public calamity" within the meaning of section 10, article 8, of the Constitution. With that interpretation of the Constitution we cannot agree. The word "calamity" indicates or supposes a somewhat continuous state, produced not usually by the direct agency of man, "but by natural causes, such as fire, flood, tempest, disease," etc. Webster's Revised Unabridged Dictionary, by G. and C. Merriman Co., edited by Dr. Noah Porter, of Yale University.

Crabb's English Synonymes in part says:

"The devastation of a country by hurricanes or earthquakes, and the desolation of its inhabitants by famine or plague, are great calamities. * * * A calamity seldom arises from the direct agency of man; the elements or the natural course of things are mostly concerned in producing this source of misery to men."

It is to be noted that the constitutional provision does not authorize the release of taxes over the state at large, even for public calamities. The power of relinquishment is to be exercised only with reference to certain subdivisions of the state by reason of public calamities which may afflict the inhabitants of such subdivisions. We are, therefore, constrained to believe that the calamities contemplated by the Constitution are those brought about by natural causes which involve the destruction of property, or property and life, such as "fire, flood, tempest, disease," etc., usually local and not state-wide in their destructive effects. We do not mean to say, however, that an area larger or smaller than counties, cities and towns might not come within the purview of the constitutional provision. What we do say is, that from an interpretation of the language used in section 10 of article 8, in the light of the definitions of "calamity" quoted, and the rule of construction stated above, it is clear that the type of public calamity within the meaning of the language employed is one due to natural causes, and which ordinarily confines its destructive effect to subdivisions of the state; and that the section has no reference to world-wide, nation-wide, and state-wide cycles of industrial and business depression. The latter are due to the well recognized rhythmic movements in modern business, and are in no sense related to natural causes which bring about the destruction of property,

or property and life, in local communities. Seligman's Principles of Economics (3d ed.), p. 583; Hadley's Economics (1st ed.), secs. 328 to 334, 240, 277, 278, 281, 289, 376, 377. The history of the constitutional provision supports this interpretation.

Under all constitutions previous to 1876, the Legislature had plenary power to exempt property and persons from taxation, and very generally exercised it. State Constitution of 1845, art. 7, sec. 27; of 1861, art. 7, sec. 27; of 1866, art. 7, sec. 27; of 1869, art. 12, sec. 19; Gammel's Laws: vol. 1, pp. 44, 291, 331, 1428; vol. 2, pp. 11, 491, 560, 929, 942; vol. 3, pp. 503, 971, 1474; vol. 4, pp. 461, 1127; vol. 5, pp. 159, 905, 943; vol. 6, pp. 39, 42, 578, 524, 639, 611, 659, 821, 1586; vol. 7, pp. 32, 42, 328, 511, 1351; vol. 8, pp. 173, 628.

From 1852 to 1858 all state taxes, except the school tax, were relinquished to the counties. Miller's Financial History of Texas, p. 87; Comptroller's Report (1876), pp. 17 to 21.

According to Raines' Index to Gammel's Laws, from 1836 to 1876 1,190 laws were enacted granting relief, many of which related to taxes.

The provisions of sections 51 and 55 of article 3, and section 10 of article 8, as well as others, were no doubt placed in the Constitution of 1876 in an effort to prevent the abuses and financial deficiencies which had characterized the administration of the government from the days of the republic.

Recurring now directly to the history of section 10, article 8, the journal of the convention shows that the subject of tax exemption, or tax relief, was before that body in various forms, ranging from the form of the section in previous constitutions, to that proposed by Judge Stayton that "The Legislature shall have no power to release the inhabitants or property of any county, city, or town from the payment of taxes levied for State purposes." Out of this conflict of opinion came the exemption sections of the Constitution, including the one before us. Journal of the Constitutional Convention of 1875, pp. 485, 423, 451, 531, 536.

An ordinance introduced in the convention recited that, "the late disastrous storm on the coast of the State of Texas ruined and placed in a condition of want and distress the people residing in the counties" of Chambers, Brazoria, Matagorda, and Calhoun, and proposed a remission of taxes therein for the year 1875. Journal of the Constitutional Convention, p. 240. This resolution became the subject of extensive debate, in the course of which reference was made to storms and tornadoes, to the

exemption granted Orange county because of a tornado in 1865, and to the terrible conditions existing at Indianola, Velasco, and other towns, and the utter destruction of property there existing. McKay's Debates of the Texas Constitutional Convention, pp. 250, 253, 254, 255. The resolution, however, was lost, and the section before us was placed in the Constitution instead.

The historian Wharton, one of the ablest writers on the history of Texas now living, and one of the profound lawyers of the state, attributes the incorporation of the section into the organic law to the storm which destroyed the city of Indianola. Wharton's History of Texas, vol. 2, pp. 394, 395.

In addition to the support which our interpretation of section 10, article 8, finds in the definitions of the word "calamity" by the lexicographers and in the history of the adoption of the section, subsequent legislative practice supports our conclusion.

The Constitution of 1876 was ratified by the people on February 15th of that year. Before the expiration of the year three relief measures under the section of the Constitution before us were passed by the Legislature, all approved on the 15th day of August, 1876; in each of which the destruction of property, or property and life, by storms or cyclones was made the basis of action. A similar act for a similar reason was approved March 8, 1879. 8 Gammel's Laws, pp. 1294, 1296, 1330.

These four initial acts, passed shortly after the adoption of the Constitution of 1876, must be regarded as a contemporaneous interpretation and construction of the section of the Constitution before us, and as plainly indicating the character of great public calamity which the organic law contemplated. These acts have been followed by many others, all of the same general character, and all involving the destruction of property, or property and life, by causes local in effect, and ordinarily attributable to what is generally termed an "Act of God." Gamel's Laws: vol. 9, pp. 117, 198, 291, 813, 847; vol. 10, pp. 547, 599, 1441; vol. 11, pp. 708, 966, 1001, 1002, Acts of 1901, pp. 4, 40, 262, 297, 298; vol. 12, pp. 36, 39, 42, 59, 95, Acts of 1903, pp. 4, 7, 10, 27, 63, Acts of 1917, pp. 55, 117, 250, 306; General Laws (1920) 3rd Called Session of the Legislature, pp. 32, 34, 37, 40; General Laws Regular Session (1921), p. 270; General Laws Regular Session (1923), p. 343; Acts 3rd Called Session (1923), p. 102; General Laws Regular Session (1927), p. 221; Acts 1st Called Session (1927), pp. 159, 191; General Laws Regular Session (1929), p. 656.

Some of the acts above enumerated find sanction in section

8, article 11, of the Constitution, relating to "calamitous over-flows," but we believe they along with the other acts cited show the legislative construction and interpretation of both sections of the organic law.

■ The rule is that contemporaneous construction of a constitutional provision by the Legislature, continued and followed, is a safe guide as to its proper interpretation. Cooley's Constitutional Limitations (8th ed.), vol. 1, p. 144, and other authorities *post*.

When the Constitution was framed and adopted the people of the state were suffering from the calamitous effects of the panic of 1873, and the depression which followed, from which the state did not recover until 1879. Miller's Financial History of Texas, pp. 196 et seq. Notwithstanding this fact, the subject was not referred to in the debates relative to the release of taxes, and taxes were not only not released by reason thereof, but the same year many measures were passed to enforce their collection.

■ Since 1873 we have had panics and industrial depressions of great severity. Hadley's Economics, p. 296; Ency. Britt. (14th ed.), vol. 17, p. 184; Seligman's Principles of Economics (3d ed.), p. 583. At no time, because of industrial depressions or panics, has the Legislature heretofore invoked the authority of section 8 of article 10. On the whole, therefore, it may be said that the legislative construction and interpretation of this constitutional provision, like the history of its adoption, supports the conclusion as to its meaning which we have previously stated,—that is, that a "great public calimity" within the meaning of the Constitution must be one having its origin in vis major or Act of God, usually local in character, and resulting in the destruction of property, or property and life. The act before us finds no support in section 10, article 8, of the Constitution. However, we are of the opinion that the act is valid upon other grounds. The mistake of the Legislature as to its constitutional basis does not prevent the act from being a valid one, if it is constitutional for other reasons. Sutherland v. DeLeon, 1 Texas, 250, 303; Lewis Sutherland on Statutory Construction, vol. 2, sec. 341.

■ We think the act is constitutional for the reason that the Legislature has the power to release, cancel, annul, or suspend penalties previously accrued for delinquent taxes, so long as these penalties have not been reduced to final judgment. Authorities *post*.

This view of the law makes it necessary for us to determine whether or not the interest exactions shown in some of the statutes, past and present, for tax delinquencies are to be regarded as interest *eo nomine,* imposed and demanded by the state as compensation for the detention of money, or whether such interest exactions are penalties, and subject to the same legislative power. We have carefully considered the history of our tax legislation, from the first act of the republic to the law here involved. On the whole, we have concluded that the impositions made for delinquency in rendering property for taxation, and for failure to pay taxes,—whether these impositions are denominated "penalties," "interest," "forfeitures," or whether prescribed without definition or name, are all in reality penalties imposed for delinquency or failure of duty, and all enacted in aid of the state's revenue, rather than as charges made by the state for the use or detention of its money. In other words, the exactions are *"penalties,"* rather than *"interest"* in the commercial or statutory sense.

Generally it may be said that from the days of the Republic down to 1876 the revenue derived from taxation was never sufficient to support the government. At the beginning of statehood the public debt of the republic was $9,949,007, and at the time Governor Coke took office the state was in debt $2,248,831.75 (or $3,167,335 according to Miller's History), although it had theretofore collected ten millions of dollars from the United States for the 67,000,000 acres of ceded territory. See generally Miller's Financial History of Texas, particularly pages 17, 49, 50, 59, 64, 67 to 82, 87, 110, 117 to 121, 133, 140, 148 to 152, 155, 164, 176, 177, 192, 193, 196, 197, 203, 207, 228 to 231, 236, 238; Governor Coke's letter, Senate and House Journal of the 16th Legislature, Extra Session (1879), pp. 21 and 24.

As might be anticipated from this brief statement of the financial history of the state, there run through the whole history of our taxation structure two outstanding and recurrent subjects of legislative attention, namely: delinquency in the rendition of property for taxes, and delinquency in payment. Many have been the remedies prescribed, but by whatever names they may have been designated by the statutes, all have been impositions, not for the use or detention of the state's money, but for the purpose of punishing the delinquent as a deterrent to delinquency and in aid of the revenue.

In the first place, impositions for failure to make returns of and pay occupation taxes, and other business and special taxes,

have been from the beginning to the present time penalties,— sometimes named as such, sometimes referred to as forfeitures or fines, sometimes as "double the amount of the tax," or defined in some other manner, but all so plainly *penalties* that we deem an analysis and discussion of the laws unnecessary. Gammel's Laws: vol. 2, pp. 191, 192, 193, 194, 273, 274, 778, 878, 1141, 1653; vol. 5, pp. 388, 494, 613, 670, 674, 692, 693, 813, 815, 1060, 1062, 1073; vol. 6, p. 406; vol. 7, p. 54; vol. 8, p. 466; R. S. 1879, Penal Code, art. 110; R. S. 1895, Penal Code, art. 112; Vernon's Complete Texas Statutes 1920, arts. 7386, 7387, 7397b, 7399, 7424, 7497, and P. C., arts. 130 to 160; Penal Code (1925), arts. 121 to 140; Vernon's Anno. Texas Statutes (1925), arts. 7065, 7066, 7071, 7074, 7075, 7076, 7083, 7091, 7114, 7134, Pocket Supplements, arts. 7065j, 7066a, 7047, sec. 43, 7047b, sec. 5.

Extractions for failure to render property for taxation, during the entire history of the state, have either been provided for in the form of penalties, or the delinquency has been punished as a crime. Down to 1842 the imposition was "double the taxes," clearly a penalty. 1 Gammel's Laws, p. 1319; 3 Cooley on Taxation (4th ed.), secs. 1089, 1092, and cases cited in the notes; Tarde v. Benseman, 31 Texas, 277; L. & N. R. Co. v. Commonwealth, 3 S. W., 139; Gachet v. McCall, 50 Ala., 307; Frazier v. Slack & Bros., 81 Atl., 161; Fulham v. Howe, 14 Atl., 652.

The Acts of 1842 and 1866 clearly imposed penalties. Gammel's Laws: vol. 2, p. 778; vol. 5, p. 1052; vol. 6, p. 378. Penalties were prescribed for failure to render under the special taxation acts of 1858, 1862, and 1863. Gammel's Laws: vol. 4, p. 1130; vol. 5, pp. 494, 694. From 1846 to 1866 the penalty for failure to render property under the general taxation acts was by fine. Gammel's Laws: vol. 2, pp. 16, 53; vol. 3, p. 196, 647.

The first act under the Constitution of 1876, that of August 9th of that year, provided a fine for delinquencies in the assessment of taxes. 8 Gammel's Laws, p. 1032. This has continued the policy of the state since that date. R. S. 1879, Penal Code, art. 113; R. S. 1895, Penal Code, art. 115; R. S. 1911, Penal Code, art. 134; R. S. 1925, Penal Code, art. 125.

Impositions for delinquency in rendition under the act of 1871 (6 Gammel's Laws, p. 950), and subsequent acts prior to 1876, were, we believe, also penalties, but will be discussed later.

We think it unnecessary to consider in detail the history of the statutory exactions upon the redemption of property sold

for taxes. In the main the requirement has been the payment of "double the amount of the taxes" or of that paid for the property at the tax sale,—plainly a penalty. Gammel's Laws: vol. 2, pp. 140, 183, 778, 1653; vol. 3, pp. 196, 657; Constitution, art. 13, sec. 1; 8 Gammel's Laws, p. 1095; R. S. 1879, arts. 4758, 4759; R. S. 1895, art. 5187; R. S. 1911, arts. 7596, 7641, 7696; R. S. 1925, arts. 7235, 7289; Vernon's Complete Texas Statutes (1925), Pocket Supplement, arts. 7284a, 7284b; 4 Cooley on Taxation (4th ed.), sec. 1573, and cases in the notes; Tarde v. Benseman, 31 Texas, 277; Gachet v. McCall, 50 Ala., 307; Louisville & N. R. Co. v. Commonwealth, 3 S. W., 139; and other authorities supra.

We come now to consider the history of impositions for failure to pay property taxes. Prior to 1840 the laws of the republic imposed no exaction for failure to *pay* this class of taxes. Gammel's Laws, vol. 1, pp. 1319, 1321; vol. 2, p. 140. The act of January 16, 1840, however, imposed a penalty of "double the amount of taxes and costs." 2 Gammel's Laws, p. 183. This exaction was repealed in 1842, except as to accrued penalties, and thereafter no imposition was provided for failure to pay such taxes until 1866, although the laws contained many other exactions which they designated as penalties for tax derelictions. Gammel's Laws: vol. 2, pp. 778, 1653, 1655; vol. 3, pp. 196, 209, 647. The laws of November 10, 1866, was replete with designated penalty provisions. See particularly sections 5, 10, 13, 19, 22, 23, 24, and 25, 5 Gammel's Laws, p. 1052. The interest exaction retrospectively imposed by the act of November 12, 1866, on taxes delinquent since 1849 was clearly a penalty provided for the stated purpose of bringing about the payment of these delinquent taxes prior to January, 1870. 5 Gammel's Laws, p. 1122; 3 Cooley on Taxation (4th ed.), secs. 1273, 1274; and other authorities *post.*

A new Constitution was adopted in 1869. The first general taxation act thereafter was that of August 15, 1870. The percentage impositions for failure to render and pay taxes were designated as penalties. 6 Gammel's Laws, p. 378. Section 116 is very obscure, but probably was intended to levy "fifty per cent. annual interest" on previously accrued taxes. Annual Report of the Comptroller (1869-1870), p. 26. This imposition was clearly a penalty. In Re Ashland Emery & C. Co., 229 Fed., 829; People of New York v. Hersawit, 263 U. S., 493; 3 Cooley on Taxation (4th ed.), sec. 1274; and other authorities *post.*

We come now to a discussion of the General Taxation Act

of April 22, 1871, enacted after the adoption of the Constitution of 1869; and, as declared in the caption, the act was passed, "To give effect to the several provisions of the Constitution concerning taxes." 6 Gammel's Laws, p. 945.

The Constitution of 1869, in section 20 of article 12, provided: "The annual assessments made upon landed property shall be a lien upon the property, and interest shall run thereon upon each year's assessment." This act, after levying taxes of various kinds, including ad valorem and occupation taxes, declares that a "supplemental tax of ten per centum interest upon the amount of each of the taxes hereby levied is levied upon all property subject to taxation" which should not be rendered for taxes, or upon which the taxes should not be paid. Some features of this act may be said to imply that the interest provided for was intended as interest *eo nomine,* instead of penal interest. This is notably so as to section 28, which authorized the filing of suit against delinquent taxpayers, and declared that "such suits shall be in the nature of actions for debt." The Constitution itself, however, used the word *"interest"* in language sufficiently broad to mean either interest as such, or *interest in the nature of a penalty.* Since the term was used in a *tax section* of the Constitution, in the absence of judicial or legislative construction, in view of the general rule throughout the United States, we would be of the opinion that it was to be imposed or permitted by the Constitution as a penalty.

The compromise or commutation of delinquent taxes provided for in sections 23 and 24 of the act evidences an unusual effort to collect back taxes, and clearly supports the view that the interest exactions of the statute were penal impositions.

Land sold for taxes under section 24 of this act could be redeemed by the payment of the amount for which it was sold, "with simple interest thereon at the rate of twenty-five per centum per annum." This was plainly a penalty. Authorities *supra* and *post.*

Subsequent acts prior to 1876 made no changes in the law material to this discussion. Gammel's Laws: vol. 6, p. 1037; vol. 7, pp. 576, 639.

We have reviewed the principal acts of the republic and state prior to the adoption of the Constitution of 1876, in so far as they throw any light on the subject before us.

We have just shown that the tax acts from 1871 to 1876, under the Constitution of 1869, provide a form of interest as an imposition for delinquencies in the rendition and payment of

taxes, and here express the view that both in the Constitution and the legislative acts penal interest was intended, rather than interest *eo nomine*. Interest exactions under the act of 1871 were treated as penalties on taxes for the years 1871 and 1872 by the trial court and the Supreme. Court in the case of Burns v. Ledbetter, 54 Texas, 374, 377. The use of the word "penalty" in section 15, article 8 of the newly-adopted Constitution comports with our conclusion. Section 1 of article 13 declares:

"All fines, penalties, forfeitures, and escheats, which have heretofore accrued to the Republic and State of Texas, under their constitutions and laws, shall accrue to the State under this Constitution."

The words *"penalties and forfeitures"* are here used without restriction, and in a manner broad enough to embrace exactions imposed for tax delinquencies, such as we have been discussing (Aulanier v. The Governor, 1 Texas, 653, 658), and must be held to have embraced the interest impositions for that purpose in the acts from 1871 to 1876. This conclusion seems consistent with section 3 of the same article, which treats of forfeitures of land for nonpayment of taxes. All legislative acts and codes passed subsequent to the adoption of the Constitution of 1876, providing for the collection of taxes delinquent on rendered and unrendered land, *due under the Acts from 1871 to 1876,* provided for the collection of *"taxes and penalties due,"* and costs. Act of August 19, 1876, secs. 4, 5, 6, 7, and 12, 8 Gammel's Laws, p. 1091; Act of August 21, 1876, secs. 14, 15, 16, 17, 20, and 21, 8 Gammel's Laws, p. 1095; R. S. 1879, arts. 4770 to 4777, arts. 4746 to 4756, 4759, 4760; 8 Gammel's Laws, p. 1461; 9 Gammel's Laws, pp. 38, 44; R. S. 1895, chap. 5, art. 5219; chap. 4, arts. 5178, 5184, 5185, 5193, 5198. This is a clear legislative construction that those acts, and the Constitution of 1869 upon which they were based, in prescribing *"interest"* for tax delinquencies exacted it as a penalty, and that all the impositions made under those laws for such delinquencies were *penalties*, and removes all doubt as to the interpretation which should be given the interest exactions in the acts involved. Texas Jurisprudence, vol. 9, p. 439, sec. 27; Cox v. Robinson, 105 Texas, 426; Koy v. Schneider, 110 Texas, 369; Myers v. U. S., 272 U. S., 52, 175; Cooper Mfg. Co. v. Ferguson, 113 U. S., 727; Cooley's Constitutional Limitations (8th ed.), vol. 1, p. 144; 6 R. C. L., pp. 63, 64, sec. 59.

The policy adopted in 1876 of no longer imposing penalties for failure to pay current property taxes, continued until the act of April 13, 1895, became the law. 10 Gammel's Laws, p.

780; R. S. 1895, chap. 5, arts. 5232a to 5232n. This act applied to all lands delinquent since *January, 1885,* and those returned *delinquent subsequent to its enactment.* None of the taxes delinquent from 1885 to the passage of this measure had carried any imposition in the nature of a penalty or interest for delinquency in payment. This act, however, declared that the taxes previously accrued, as well as those which might thereafter accrue, should bear interest at the rate of six per cent. per annum. 10 Gammel's Laws, p. 780; R. S. 1895, chap. 5, arts. 5232a to 5232n.

In addition to the interest exaction, a ten per cent. penalty provision on delinquent taxes was added in 1897. 10 Gammel's Laws, p. 1186. These interest and penalty provisions have remained in our laws down to the present time, and in practical application are the main subject-matter of this controversy. R. S. 1911, title 15 chap. 126; Vernon's Complete Texas Statutes (1920), arts. 7683 to 7700; R. S. 1925, title 122, chap. 10, arts. 7319 to 7345; Vernon's Annotated Texas Statutes, vol. 20, pp. 175 et seq., and Pocket Supplement, p. 48.

From the foregoing historical review of our tax legislation it is evident that the imposition of *penalties* of some character for tax delinquencies has been continuous except as to exactions for delinquency in the payment of property taxes during the periods named.

■ We have concluded that the interest exactions since 1895 are penalties, for reasons which will now be stated.

First. This conclusion is consistent with the general policy of the government from the outset, which has been one of penal exactions for all classes of tax delinquency.

Second. In construing the interest exactions provided for since 1895 as penalties, we are placing upon that type of imposition the same interpretation as the Legislatures which enacted the laws and codes containing it placed upon a similar use of the term in the acts from 1871 to 1876, and we believe in harmony with the conception of those acts which the convention in 1875 entertained when it placed article 13, section 1, and article 8, section 15, in the Constitution of 1876.

Third. This construction is consistent with other existing tax laws which expressly class *interest* exactions as *penalties.* Vernon's Annotated Texas Statutes (1925), arts. 7134, 7347.

In this connection, it may be noted that the different rates of interest provided for different delinquencies tend to show that the interest impositions are penalties, since there is no reason why the rates for such detentions should not have been

the same. The usual rate is six per cent., which is also the legal rate of interest (R. S., art. 5070), but other and higher rates are provided for certain tax delinquencies, which make the latter clearly penal impositions. Vernon's Annotated Texas Statutes (1925), arts. 7065, 7066, 7134, 7065j, sec. 43 of art. 7047, sec. 5 of art. 7047b (Pocket Supplement); In Re Ashland Emery & C. Co., 229 Fed., 829; New York v. Jersawit, 263 U. S., 493.

■ Fourth. The rule is that if a statute is capable of two constructions, one of which will sustain its validity, and the other render it unconstitutional, it is our duty to give it that interpretation which sustains the validity of the act. Cooley's Constitutional Limitations (8th ed.), vol. 1, p. 376.

Section 15 of article 8 of the Constitution provides a descriptive legal term for exactions which may be imposed by the Legislature for failure to pay property taxes, namely, *"penalties,"* a common law term implying punishment.

The rule is, "that where the means for the exercise of a granted power are given, no other or different means can be implied as being more effectual or convenient." Cooley's Constitutional Limitations (8th ed.), vol. 1, p. 139; Foster v. City of Waco, 113 Texas, 352. The imposition of *penalties* is the means provided to prevent tax delinquencies, and since the word implies some form of punishment, it is obvious all legislation competent under the Constitution must be of that nature. Previous constitutions contained no such term, and the evident purpose of the change in the Constitution of 1876 was to exclude from the legislative power the imposition of any exaction for failure to pay property taxes, except such as might come within the meaning of *penalties and the rules of law applicable thereto.* Since "interest" exacted by statutes here involved may mean either interest as such, or a penalty or punishment for tax delinquency, we adopt the latter interpretation, because consistent with the power which the Legislature can constitutionally exercise.

Fifth. Our interpretation and construction that "interest" is imposed as a penalty in our tax statutes is one consistent with the rule which obtains generally. Cooley on Taxation (4th ed.), vol. 3, sec. 1274; 37 Cyc., p. 1165; New Orleans v. Fisher, 180 U. S., 185; In Re Ashland Emery & C. Co., 229 Fed., 829; People of New York v. Jersawit, 263 U. S., 493; Eyerman v. Blaksley, 78 Mo., 145; City of St. Joseph v. Forsee, 84 S. W., 1138; Seaboard Nat. Bank. v. Woeston, 75 S. W., 464; Colby v. City of Medford, 167 Pac., 487; State v. Coos County, 237 Pac.,

678; Livesay v. DeArmond, 68 A. L. R., 422, 284 Pac. 166; Specht v. City of Louisville, 122 S. W., 846; Walston v. City of Louisville, 66 S. W., 385; Woolley v. City of Louisville, 71 S. W., 893; Shultz v. Ritterbusch, 134 Pac., 961; Johnson v. Peacock, 98 Ill., 172; State v. Smith, 94 Ill., 226; Flint & Pere Marquette Ry. Co. v. Saginaw Co., 32 Mich., 260; Drennan v. Herzog, 23 N. W., 170; Billings v. U. S., 4 American Fed. Tax Rep., p. 4709, 232 U. S., 261.

The rule is one of almost universal approval. The courts of the United States do not adhere to it when tax statutes of the United States are before them, for the reason that they regard such taxes as debts, upon which interest as such is collectable regardless of whether or not the statutes provides for such an exaction. These holdings of those courts are admittedly contrary to those of the American state courts generally, which hold: First, that taxes are not debts in the ordinary sense of contractual obligations; and, second, that as impositions by governmental authority they do not bear interest except by the express provisions of the statute. Billings v. U. S., supra; Cooley on Taxation (4th ed.), vol. 1, sec 22; City of Rochester v. Bloss, 6 L. R. A. (N. S.), 694, and list of cases cited in the notes. When state tax laws, however, are involved, or the bankruptcy statutes, the general rule as stated by us is followed by the Supreme Court of the United States. New Orleans v. Fisher, and In Re Ashland Emery & C. Co., and other cases supra.

The Supreme Court of this state has heretofore followed the state authorities in both the respects named above. Cave v. City of Houston, 65 Texas, 619; Western Union Telegraph Co. v. State, 55 Texas, 319; Edmondson v. Galveston, 53 Texas, 157. The opinions of the Supreme Court of the United States, therefore, cannot be regarded as authoritative or controlling in this state.

We come now to the question of the power of the Legislature to remit penalties imposed for tax delinquencies, by which term all exactions, including the interest exactions imposed by law for such delinquencies, will be hereafter referred to in this opinion. In the first place, the rule is an elementary one that the Legislature can enact all laws not prohibited by the Constitution, either in express terms or by necessary implication. Cooley on Constitutional Limitations (8th ed.), vol. 1, pp. 355, 345; Texas Jurisprudence, vol. 9, pp. 444, 446, secs. 30, 31, 32.

■ The only express limitation on the right of the Legislature to remit penalties is that specified in section 56 of article 3,

which prohibits the Legislature from "remitting fines, penalties, and forfeitures by *special law.*" The necessary implication from the language used is that "fines, penalties, and forfeitures" may be remitted by *general laws,* such as the one before us. Day Land & Cattle Co. v. State, 68 Texas, 545, 546. Nor do we think that the Legislature is prohibited, either expressly or by necessary implication, by the language of any other section of the Constitution. If it be said that the provisions of sections 51 and 55 apply to penalties imposed for tax delinquency, then for the same reason we would be compelled to say they apply to *all classes of penalties,* and to *fines* and *forfeitures* as well. Such a construction would render meaningless the power clearly reserved to the Legislature by the terms of section 56 of article 3, to release "fines, penalties and forfeitures" by general law. The rule is that a constitution is to be construed as a whole, and *"effect is to be given, if possible to the whole instrument, and to every section and clause.* If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory. * * * It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity. *One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together. Every provision should be construed, where possible, to give effect to every other provision."* (Italics ours.) Cooley's Constitutional Limitations, (8th ed.), vol. 1, pp. 127, 128, 129; Lufkin v. City of Galveston, 63 Texas, 437, 439; Texas Jurisprudence, vol. 9, p. 434, secs. 24, 25.

Applying these rules, it is plain that sections 51 and 55 of article 3 cannot be construed to render nugatory the power to remit fines, penalties and forfeitures by general law. Our construction of the Constitution that the Legislature may remit accrued penalties by general law, notwithstanding sections 51 and 55 of article 3, and the equal taxation and other provisions of the Constitution, is consistent with the authorities generally in the jurisprudence of the United States. Cooley on Taxation (4th ed.), vol. 3, sec. 1273; 37 Cyc., pp. 1542, 1543, 1545; 21 R. C. L., p. 210; 25 R. C. L., p. 943; 25 Corpus Juris, p. 1213; State v. Mitchell, 110 Texas, 498, 221 S. W., 925; State v. Hum-

ble Oil & Ref. Co., 263 S. W., 319 (writ refused); Jessee v. DeShong, 105 S. W., 1011; State v. T. & N. O. Ry. Co., 125 S. W., 53 (writ refused); Goodrich v. Wallis, 143 S. W., 285; Maryland v. B. & O. Ry. Co., 3 Howard (U. S.), 543; U. S. v. Morris, 10 Wheat. (U. S.), 246; U. S. v. The Reform, 5 Wall. (U. S.), 541; Norris v. Crocker, 13 Howard (U. S.), 438; Yeaton v. U. S., 5 Cranch (U. S.), 281; Cleveland, C. C. & St. L. R. Co. v. Wills, 58 L. R. A., 651; Commonwealth v. Standard Oil Co., 101 Penna. State Rep., 119, 150; State v. Coos County, 237 Pac., 678; Livesay v. DeArmond, 68 A. L. R., 422, 284 Pac., 166; State v. Jersey City, 37 N. J. L., 39.

The tax cases cited proceed upon the principle that a penalty is not a part of the tax proper, and is therefore subject to legislative control. Other cases involving the disposition of tax penalties and other constitutional questions support the rule. Board of Commissioners v. Close Bros., 198 Pac., 845; State v. Mayo, 108 N. W., 36; Sedwick v. City of Wichita, 64 Pac., 621; Crookston v. County Com., 82 N. W., 586, 79 Am. St. Rep., 453; New Whatcom v. Roeder, 22 Wash., 570; Kansas City v. Stewart, 136 Pac., 241; Board of Commissioners v. City of Clinton, 154 Pac., 513; Hunter v. State, 154 Pac., 545; State v. Stroup, 155 N. W., 90; Security Savings Society v. Spokane County, 189 Pac., 260.

This opinion is too long to admit of quotations from many authorities. There can be no doubt from the Texas cases cited above that the rule in this state is consistent with the rule generally that penalty statutes can be repealed, and when repealed accrued penalties are no longer collectible, but the derelictions for which imposed are pardoned or forgiven. The other authorities cited by us show that this general rule is universally applied to penalties imposed for tax derelictions. Judge Cooley states the rule: "If the statute imposing them is repealed, the penalties are gone, and a clause reserving to the state all the ordinary remedies for the collection of taxes will not save them." 3 Cooley on Taxation, supra, pp. 2540, 2541. With reference to the legislative power over tax penalties, Cyc., supra, declares: "That body may at times repeal a statute imposing penalties and remit the penalties."

We will quote from but two cases, both involving the remission of tax penalties. In the case of Commonwealth v. Standard Oil Co., 101 Penna. State Reports, 119, 150, the Supreme Court of Pennsylvania in part said:

"The law upon this state of facts is well settled. The Commonwealth reserved the right to collect this tax only. The

right to the penalties was gone. *No judgment can be rendered in any suit for a penalty after the repeal of the Act by which it was imposed.* The repeal of a statute puts an end to all suits founded upon it, even though commenced before the date of the repeal. Rex v. Justices of London, 3 Burr., 456; Schooner Rachel v. United States, 6 Cranch, 329; The Irresistible, 7 Wheaton, 551; United States v. Preston, 3 Peters, 57; Pope v. Lewis, 4 Alabama, 489; Lewis v. Foster, 1 New Hampshire, 61. The repeal of an act imposing a penalty is itself a remission: Maryland v. Balt. & O. R. R. Co., 3 Howard, 534; Morris v. Crocker, 13 Id., 429. In reserving, in repealing Acts, all taxes accrued and accruing the Commonwealth reserved the right to employ all the ordinary remedies for their collection. But the penalties are in no sense such remedy. They are merely a punishment for the omission to make the reports required by law. The state might have also excepted the penalties from the operation of the repealing Acts, but did not do so. Penal statutes must be construed strictly, and never extended by implication: Andrews v. United States, 2 Story, 203. When there is such an ambiguity in a penal statute as to leave reasonable doubt of its meaning, it is the duty of a court not to inflict the penalty: The Schooner Enterprise, 1 Paine C. Ct., 32.

"*The charge of interest at 12 per cent. is also a penalty,* and is governed by the same rules. Easton Bank v. The Com., 10 Barr, 451, would seem to be conclusive upon this branch of the case." (Italics ours.)

The case of Livesay v. DeArmond, 68 A. L. R., 422, 284 Pac., 166, involved a statute of the State of Oregon providing for the remission of tax penalties. The Supreme Court held the act constitutional. In discussing the question that court disposed of some of the objections made to the act before us. In part the court said:

"Disposing of this contention, it is to be observed that this act does not confer any authority to waive or reduce a tax; the authority granted is confined to a waiver or a reduction of the *penalty and interest* imposed for the failure to pay the tax. It seems desirable to notice the distinction between a tax and any sums exacted by law for the failure to promptly pay it. Such exactions are often termed interest, yet the reasons which support them are unlike those upon which interest charges are founded. In the absence of some unusual provision in the statute authorizing the levying of a tax, it is generally held that a tax is not a debt. Whiteaker v. Haley, 2 Or., 128; Lane County v. Oregon, 7 Wall., 71, 19 L. Ed., 101; Cooley Tax.,

sec. 22; 26 R. C. L., 'Taxation,' sec. 11. Therefore, an unpaid tax draws no interest, unless legislation expressly directs a different result. Stitt v. Stringham, 55 Or., 89, 105 Pac., 252; Cooley, Tax., sec. 1274.

"From Colby v. Medford, 85 Or., 485, 167 Pac., 487, 500, we quote: 'In passing, it may be noted that *when interest is charged on a delinquent tax, it is not regarded as interest in the sense that it is a consideration for the forbearance of money, but it is deemed to be a penalty; and when interest, so called, is charged, it is sustained on the theory that it is a means to insure prompt payment of the tax, and it is not a part of the tax.* State ex rel. First Thought Gold Mines v. Superior Ct., 93 Wash., 433, 161 Pac., 77.'

"And from State ex rel. Pierce v. Coos County, 115 Or., 300, 237 Pac., 679, we quote: 'We have heretofore held that *the increased percentage and other burdens prescribed by the legislature for nonpayment of taxes, are in the nature of penalties, and are not part of the taxes. Colby v. Medford, 85 Or., 485, 527, 167 Pac., 487. They may have been prescribed as a means of inducing the taxpayers to pay promptly, but they are distinctive from the tax itself. Taxes are a contribution prescribed by the statute and levied by the authorities for the support of the government; and, as stated in State v. Galveston, H. & S. A. R. Co., 100 Texas, 153, 97 S. W., 71, the penalties are somewhat in the nature of a fine upon a delinquent taxpayer for his delay in paying his taxes. They are not levied by the counties as part of the taxes, but are creatures of the statute, and, what the statute has imposed by way of penalty, the statute can remit.'*

"We shall pursue this matter no further, for the respondent frankly concedes that the penalty and the interest 'are no part of the tax itself.' Since these charges are punitive in nature, and are imposed to spur on the property owner to a prompt payment of the tax, it would seem to follow that the constitutional requirement that 'all taxes shall be levied and collected under general laws operating uniformly throughout the state' does not apply to these charges. It may be argued, however, that these exactions come within the spirit of the constitutional requirement, and that therefore its language should be liberally construed so as to include them. But, since these charges are imposed for punitive, as distinguished from revenue, purposes, there would seem to be no greater occasion for subordinating statutes imposing them to constitutional provisions enjoining uniformity in taxation than subjecting any

other penal statutes to the same clause of our Constitution. Constitutional requirements in regard to uniformity of taxation are restricted to measures which seek to raise revenue, and have no application to burdens imposed which are not, properly speaking, taxes. King v. Portland, 2 Or., 146; 37 Cyc., 'Taxation,' p. 731.

\* \* · \* \* \* \* \*

"From State ex rel. Pierce v. Coos County, 115 Or., 300, 237 Pac., 678, we quote: 'We do not regard this, however, as an act regulating taxation, but merely as an act remitting certain penalties, which would otherwise have accrued but for its passing. The act of taxation had already been performed when the tax was properly levied by the authorities in Coos County, and this did not auhorize the levying of any taxes, or regulate the manner in which they should be paid, but was an act of grace remitting certain penalties, but for which the parties named in the act would have been liable. Neither does it conflict with any provision requiring taxes to be equal and uniform. The taxes levied upon the property in Coos County and every other county were, so far as this proceeding is concerned, equal and uniform, and the clause in question did not render them less equal or less uniform.'

"We, therefore, conclude that this act is not violative of article 9, section 1, of our Constitution." (Italics ours.)

We regard the authorities cited and quoted as conclusive of the question that the penalties (in which we include the interest impositions previously discussed) may be remitted. Section 10 of article 8 does not prohibit the remission because penalties are not taxes, nor part of the taxes, as the authorities show. Nor does section 1 of article 8, requiring taxation to be equal and uniform, militate against the validity of the act before us. The many authorities cited dispose of these questions. See particularly State v. Coos County, 237 Pac., 678, and Livesay v. DeArmond, previously quoted.

The cases cited by appellee do not militate against the conclusion we have stated as to the validity of the act before us. None involved the remission of penalties, and none are in point.

The act before us not only releases all accrued "interest and penalties" on delinquent state taxes, but makes the remission apply to named districts and subdivisions of the state. This does not affect the validity of the act. The districts named are merely subdivisions of the state, and the Legislature has the same power to provide or change the remedies for the collection of taxes, including the remission of penalties, due its

subdivisions as it has for the state at large. 4 Cooley on Taxation (4th ed.), sec. 1821; Board of Commissioners v. Close Bros., 198 Pac., 845; Board of Commissioners v. Clinton, 154 Pac., 513; State v. Mayo, 108 N. W., 36; City of New Whatcom v. Roeder, 22 Wash., 570; Kansas City v. Stewart, 136 Pac., 241; Bd. of County Commissioners v. City of Wichita, 64 Pac., 621; Hunter v. State, 154 Pac., 545; State v. Baltimore, etc. R. R. Co., 38 Am. Dec., 317; Pierce v. Kimball, 23 Am. Dec., 537.

The statutes from time to time have contained provisions for the collection of delinquent taxes by attorneys or others by contracts for a percentage of the tax, or taxes, interest, and penalties collected. Vernon's Complete Texas Statutes (1925), arts. 7335, 7344, arts. 7264a and 7335a (Pocket Supplement). The power to make contracts under these statutes is subordinate to the general legislative power to impose, increase, diminish, or remit penalties for tax delinquencies, and the existence of such contracts, where taxes have neither been paid nor reduced to judgment, does not prevent the remission statute from being effective, and the delinquent taxpayer has the same right to pay his taxes without paying *penalties* and *interest* (so-called) that he would have had such contracts never been made. The remission statute applies unless prior to the effective date of the statute the *taxes had actually been collected or reduced to final judgment.* Authorities supra; 25 Corpus Juris, p. 1213; United States v. Morris, 10 Wheat. (U. S.), 246; Crocker v. Egbert, 13 Howard (U. S.), 438; Confiscation Cases, 7 Wall. (U. S.), 454; Cleveland, C. C. & St. L. Ry. Co. v. Wills, 58 L. R. A., 651; U. S. v. Tynen, 11 Wall. (U. S.), 88; Coles v. County of Madison, 12 Am. Dec., 161; Pierce v. Kimball, 23 Am. Dec., 537, and other cases cited in note 1; Cooley's Constitutional Limitations (8th ed.), vol. 2, p. 757.

For the reasons given in this opinion, we have concluded that the statute involved is constitutional and valid. We accordingly answer the question certified, and say that the trial court erred in holding chapter 18 (House Bill No. 80), General Laws of the Second Called Session of the Forty-second Legislature unconstitutional, and in denying the relator the relief sought.