**Bob BULLOCK, Comptroller of Public Accounts, et al., Appellants,**

**v.**

**FARMLAND INDUSTRIES, INC., Appellee.**

**No. 8480.**

Court of Civil Appeals of Texas, Beaumont.

July 17, 1980.

Connie Odé, Asst. Atty. Gen., Austin, for appellants.

C. Morris Davis, Austin, for appellee.

KEITH, Justice.

The Comptroller of Public Accounts, the Treasurer, and the Attorney General of the State of Texas appeal from a summary judgment which declared that the plaintiff below may not lawfully be required to pay a franchise tax and which ordered a recovery of such taxes and interest thereon paid to the State of Texas under protest.

The principal question presented by the appeal is whether Farmland, a foreign cooperative marketing association, is entitled to exemption from the payment of franchise taxes when its corporate charter contains purpose clauses authorizing activities which would not be lawful if conducted by domestic cooperative marketing associations.

Being of the opinion that the judgment of the trial court was correct, we affirm for the reasons now to be stated.

The case is unique in that the parties agree that the exemption statute cannot be applied literally. This is apparent since *Article 5764*[1] speaks only of associations "organized hereunder", i. e., the Texas Act. Read literally, no foreign cooperative marketing association could be exempt from the tax because by definition only domestic associations are organized under the Act. This, of course, raises the specter of constitutional discrimination against the foreign associations.

Farmland is a cooperative marketing association incorporated and operating under the provisions of the Kansas Cooperative Marketing Act, *Kan.Stat. §§ 17–1601, et seq.* Its principal business is the provision of a full line of farm supplies to the patrons of its member associations, some 2,299 local farm cooperative associations in the midwestern states. But, State's counsel contends that its Kansas charter authorizes it to engage in business activities forbidden to similar cooperative associations organized under the Texas statute, *Article 5737.* We note that the purpose clause in Farmland's charter is extremely broad, authorizing, inter alia, "doing a public warehouse business and storing agricultural products in interstate commerce."

State's counsel contends that while Farmland is permitted under its charter to do a public warehouse business, such activities are not properly within the scope of authorized acts of domestic associations. Indeed, it is apparent that *Article 5740* does not authorize the issuance of a charter as broad as that issued to Farmland by the Kansas authorities.

From this premise the State contends that while a foreign cooperative marketing association may qualify to do business in this state, it does not necessarily qualify for an exemption from franchise and license taxes. Counsel argues: "[A] foreign cooperative marketing association qualifies for a tax exemption pursuant to Article 5764 if and only if . . . the laws of the state in which it is incorporated are analogous to the provisions of the Texas Act—for only then is such foreign cooperative marketing association organized under, or in accordance with, the Texas Act."

Farmland, as might be expected, disagrees, contending that this reading of the Act is too restrictive. Its counsel contends that a foreign cooperative marketing association need only to qualify to transact business under *Article 5763*[2] to qualify for the exemption under *Article 5764*. It argues that the exemption may not be denied simply because its stated corporate purposes are broader than those allowed in the charters of domestic corporations. Farmland contends that to the extent its corporate purposes are broader than those allowed to domestic corporations, the impermissible purposes should be treated as surplusage and ineffective or ignored in favor of the corporation's actual activities within the state.

In *Aultz v. Zucht*, 209 S.W. 475, 477 (Tex. Civ.App.—San Antonio 1919, no writ), the court set out the rule in this manner:

"There is good authority for holding that the provisions of a charter which are not authorized by law will be treated as surplusage. Morawitz on Private Corp. § 32; *Galveston Land & Imp. Co. v. Perkins*, 26 S.W. 258. All provisions purporting to authorize the corporation to engage in the practice of dentistry are void, and can be treated as surplusage."

---

1. *Article 5764, Tex.Rev.Civ.Stat.Ann. (1958)*: "Each association organized hereunder shall pay to the Commissioner an annual license fee of ten dollars but shall be exempt from all franchise or license taxes. . . . " (footnote omitted)

All statutory references are to the Cooperative Marketing Act, *Article 5737, et seq., Tex. Rev.Civ.Stat.Ann. (1958)*, unless otherwise noted.

All emphasis has been supplied unless noted otherwise.

2. *Article 5763*, in part: "[A]ny co-operative marketing association incorporated under the laws of any other State may apply for and be granted a permit to do business in this State and pay the same filing fee as required of domestic corporations organized for a similar purpose."

See also, *1 Hildebrand, Texas Corporations, § 26, at 106–110 (1942); 1 Fletcher, Cyclopedia of the Law of Private Corporations, § 91 at 402, and § 150 at 576 (1974 Rev. Vol.).*

The Attorney General has held that a corporation organized under the Texas Cooperative Marketing Act cannot include in its charter an amendment to authorize it to operate a public warehouse. *Tex. Att'y Gen. Op. No. O–6375 (1945).* Considering the elaborate statutory scheme of regulation of markets and warehouses found in *Title 93, Tex.Rev.Civ.Stat.Ann. (1958)*, we are in accord with the views of the Attorney General.[3]

The action of the Secretary of State in admitting Farmland to Texas authorized it to do business only in accordance with Texas laws and did not authorize it to engage in warehouse activities. But State's counsel does not contend that Farmland has engaged in any activities in Texas which were not authorized if done by domestic associations. Consequently, we are of the opinion, and now so hold, that the purpose clauses in Farmland's charter which would be impermissible in the charter of a domestic association must be treated as surplusage.

It is a fundamental rule of constitutional law that a state may not lawfully impose the franchise tax on a foreign marketing association while at the same time exempting similar domestic associations from such tax. One of the leading cases is *Southern Railway Co. v. Greene*, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536 (1910). See also, *WHYY, Inc. v. Borough of Glassobor*, 393 U.S. 117, 119–120, 89 S.Ct. 286, 287, 21 L.Ed.2d 242, 245 (1968).

Each of the State's points of error is overruled and the judgment of the trial court is AFFIRMED.

CLAYTON, J., not participating.

**3.** Opinions of the Attorney General rendered in due course are generally regarded as highly persuasive and are entitled to great weight unless clearly wrong. See, e. g., *Jones v. Williams*, 121 Tex. 94, 45 S.W.2d 130, 131, 79 A.L.R. 983 (1931).