

THE ATTORNEY GENERAL
OF TEXAS

Gerald C. Mann
~~XXXXXXXXXXXXXXX~~
~~WITH WILSON~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Mr. H. D. Dodgen
Chief Clerk
Game, Fish & Oyster
 Commission
Austin, Texas

Opinion No. O-2864
Re: Liability of Game, Fish & Oyster
Commission to Water Improvement District
for "flat rate water service charge,"
for customary charge for water used, and
for sinking fund taxes.

Dear Sir:

This will acknowledge receipt of your letter of October 26 1940, wherein you request the opinion of this department as to certain matters therein set out. We quote your letter as follows:

"The State of Texas owns 40.57 acres of land lying within the boundaries of the Bexar-Medina-Atascosa Counties Water Improvement District No. 1. There has been built on this land a fish hatchery which is now in operation. The hatchery is being supplied with water from an irrigation canal operated by the above water improvement district.

"We respectfully request your opinion on the following questions:

"1. Should the Game, Fish and Oyster Commission be required to pay the flat rate water service charge customarily assessed against owners of land lying within this district?

"2. Is the Game, Fish and Oyster Commission required to pay the customary charges for water used, such charge being in addition to the flat rate charge?

"3. Is the Game, Fish and Oyster Commission required to pay sinking fund taxes assessed by the Water Improvement District?

"4. Does the Bexar-Medina-Atascosa Counties Water Improvement District No. 1 have authority to furnish water without charge to the State Fish Hatchery located within that district?

Mr. H. D. Dodgen, Page 2

"3. Is the Game, Fish and Oyster Commission required to pay sinking fund taxes assessed by the Water Improvement District?

"4. Does the Bexar-Medina-Atascosa Counties Water Improvement District No. 1 have authority to furnish water without charge to the State Fish Hatchery located within that district?

"Your attention is called to the existence of an agreement the original copy of which is believed to be in the file of the Attorney General's Office, relative to the supply of water to be furnished the State Fish Hatchery located within the boundaries of the Bexar-Medina-Atascosa Counties Water Improvement District No. 1."

We shall discuss the agreement referred to in another portion of this opinion.

Under our statutes when a water control and improvement district is organized, it is required to set up two funds. One of these, provided for in Article 7713, R. C. S., 1925, is denominated the "interest and sinking fund," and the other, authorized by Article 7714, R. C. S., 1925, is the "maintenance and operating fund."

Article 7712, R. C. S., 1925, empowers the directors to levy a tax upon all property within the district sufficient to pay the interest on its bonds and to provide a sinking fund to pay off the bonds at maturity. The directors of the District under Article 7713 are required to place in the first fund above mentioned money realized from taxes.

Moneys for the maintenance and operating fund are derived from two types of charges for water service. The directors of the District under the provisions of Article 7752, R. C. S., 1925, are required to estimate the operating and maintenance expense at the beginning of each year. A portion of the necessary fund is then to be raised by assessments against all irrigable lands within the district, pro rata per acre, and the remainder is to be paid by persons taking water.

We assume that what you refer to as the "flat rate water charge" is the pro rata assessment levied against each

the State government in the absence of provisions of theConstitution or statutes specifically granti ng them relief thereform. The exemption from taxation may not be construed to relieve them of such other burdens.  See 40 Tex.Jur. 109 and authorities cited.

We doubt that it could be seriously contended that the customary charge for water used, even remotely approaches any of the accepted definitions of a "tax."  This charge is nothing more than a fee for a service to be paid only by those making use of such service.

There might have been some doubt as to whether the assessments or "flat rate water charge" is a "tax," had not our Appellate Courts already foreclosed the question.  This assessment is levied against all irrigable lands within the District without regard to whether the owners of such lands avail themselves of the water service or not.

However, the statute authorizing this charge scrupulously refrains from designating this charge as a "tax" and, as stated, our Courts, in the few instances when the question was before them, have pointed out that this assessment is not a tax."

In Brady vs. Hidalgo County Water Control and Improvement District (Civ.App., San Antonio, 1932) 36 S.W.(2d) 298; affirmed by the Commission of Appeals in 91 S.W. (2d) 1058, the court used the following language:

"The district cannot levy taxes except to provide interest upon its bonds and sinking fund for the retirement of its bonds.  Its operating expenses, after construction expenses, must come from <u>water rentals</u> and <u>service charges</u>."

In Western Metal Manufacturing Company of Texas vs. Cameron County Water Improvement District (Civ.App. Fort Worth, 1927) 105 S.W.(2d) 700, error dismissed, the court makes the following observation:

"The prayer in plaintiff's petition asking for a mandamus to require the assessment and collection of <u>fees</u> against land in the district for the purpose of raising funds to pay the current maintenance and operating expense of the district was fully justified, if recovery should be had by it.  We have shown that by the provisions of article 7752, it is the duty of the directors to estimate the current expense for the year and to collect it from the land owners in the district in the manner and proportions therein set out.  *** It will be noted, however, that the

prayer in the petition asks for the writ of mandamus to require the collection of 'taxes' as well as <u>assessments</u> against the property in the district to raise revenues for the purpose of paying plaintiff's debt. If the writ is granted it should not require the collection of '<u>taxes</u>' for the purpose mentioned, since <u>taxes can only be collected to pay interest and to create a sinking fund to retire the bonds when due.</u>"

The following language from Texas Jurisprudence also adheres to this distinction:

"While taxation is the source of the funds used for the payment of interest on the district's bonded indebtedness and the accumulation of a sinking fund, expenses of maintaining and operating the water system cannot be met in this way. Such expenses must be paid, in the case of water improvement districts at least, from a fund known as the 'maintenance and operating fund,' which is created by levying pro rata assessments against all irrigable lands within the district and by making charges for all waters delivered to water users." 44 Tex.Jur. 295.

Another opinion by the Commission of Appeals declared:

"The only provision in the chapter expressly authorizing a tax for any purpose is to be found in Article 5107-69 (now Art. 7712)" Creager et al v. Hidalgo County Water Improvement Dist. No. 4. 283 S.W. 157.

It becomes apparent, therefore, that the answers to your first and second questions are that the Commission is required to pay both the "flat rate water service charge" assessed against all irrigable land in the district and the customary charge for water used-unless the District has by the contract mentioned above relieved the Commission of the burden of these charges.

The agreement to which you have directed our attention recites that the Commission agreed to locate a fish hatchery within the boundaries of the Bexar-Medina-Atascosa Counties Water Improvement District No. 1 and that the directors of the District agreed to furnish the land and water necessary for so long as the property was used for a hatchery. By a resolution of the Board of Directors of the District, which was incorporated into the agreement, the District agreed to furnish water to the Commission "without charge."

Two possible constructions of the language "without charge" occur to us--that neither the "flat rate" nor the

"customary service charge" would be paid or that the Commission would be relieved only of payment of the "customary service charge."  The District has apparently adopted the latter construction, while the Commission has adopted the former.

We have no way of knowing which construction those who made the agreement intended or whether the meaning of this phrase was even discussed.  However, at all events, it appears to be undisputed that the parties intended to relieve the Commission at least of the burden of paying the customary service charges based upon the amount of water used.  In the absence of more evidence we feel constrained to adopt that construction.

Under such a construction, the answer to your first question is "yes", while the answer to your second question is "no", and you are so advised.  The obvious answer to your third question, under the pertinent authorities cited above is "no."

Your fourth question concerns the authority of the directors of the District to donate water service to theCommission.  We find nothing in the statutes which may be construed as authorizing the directors to dispose of water service otherwise than by sale.  Sound public policy would militate against a presumption of such authority.  See Jones v. Williams, 121 Tex. 94, 45 S.W. (2d) 130, 79 A.L.R. 983; Llano County v. Knowles, et al, (Civ.App.) 29 S.W. 549; and Dreeben vs. Whitehurst (Comm.App., 1934) 68 S.W. (2d) 1025.

We have reached the conclusion however that your object in asking the fourth question was to determine whether the District may furnish water to the Commission without charge under the agreement to which you directed our attention in your letter, and we will answer it under that assumption.  That agreement, as pointed out above, recites as a consideration the promise on the part of the Commission to locate a fish hatchery within the boundaries of the District.  We know of no reason why this would not be valid consideration upon which the District would be authorized to furnish the water service.

The binding effect of this contract might be upheld on still another basis.  It was held in a recent case that even though a contract entered into by directors of a Water Improvement District is prohibited by the Constitution and laws of the State, yet if it was deliberately entered into by the proper District officials, thereunto lawfully authorized and the other party was induced thereby to perform services exacted of it in reliance upon the contract and the District accepted such services and benefits derivable therefrom, the District was bound by the terms of the contract.  Nagle, Witt, Rollins Engineering Co. vs. La Salle Water Improvement District No. 1 (Civ.App.,

Mr. H. D. Dodgen, Page 6

latter construction, while the Commission has adopted the former.

We have no way of knowing which construction those who made the agreement intended or whether the meaning of this phrase was even discussed. However, at all events, it appears to be undisputed that the parties intended to relieve the Commission at least of the burden of paying the customary service charges based upon the amount of water used. In the absence of more evidence we feel constrained to adopt that construction.

Under such a construction, the answer to your first question is "yes", while the answer to your second question is "no", and you are so advised. The obvious answer to your third question, under the pertinent authorities cited above is "no."

Your fourth question concerns the authority of the directors of the District to donate water service to the Commission. We find nothing in the statutes which may be construed as authorizing the directors to dispose of water service otherwise than by sale. Sound public policy would militate against a presumption of such authority. See Jones v. Williams, 121 Tex. 94, 45 S. W. (2d) 130, 79 A. L. R. 983; Llano County v. Knowles, et al, (Civ. App.) 29 S. W. 549; and Dreeben vs. Whitehurst (Comm. App., 1934) 68 S. W. (2d) 1025.

We have reached the conclusion however that your object in asking the fourth question was to determine whether the District may furnish water to the Commission without charge under the agreement to which you directed our attention in your letter, and we will answer it under that assumption. That agreement, as pointed out above, recites as a consideration the promise on the part of the Commission to locate a fish hatchery within the boundaries of the District. We know of no reason why this would not be valid consideration upon which the District would be authorized to furnish the water service.

The binding effect of this contract might be upheld on still another basis. It was held in a recent case that even though a contract entered into by directors of a Water Improvement District is prohibited by the Constitution and laws of the State, yet if it was deliberately entered

into by the proper District officials, thereunto lawfully authorized and the other party was induced thereby to perform services exacted of it in reliance upon the contract and the District accepted such services and benefits derivable therefrom, the District was bound by the terms of the contract. Nagle, Witt, Rollins Engineering Co. vs. La Salle Water Improvement District No. 1 (Civ. App., San Antonio, 1931) 44 S. W. (2d) 1025, error dismissed. See also City of Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058; Sluder v. City of San Antonio (Com. App.) 2 S. W. (2d) 841; and Hudspeth County Conservation & Reclamation Dist. v. Spears (Civ. App., El Paso, 1931) 39 S. W. (2d) 94.

You are advised, therefore, that under the agreement referred to, the District is authorized to furnish water to the State Fish Hatchery located within that District "without charge."

Trusting that we have sufficiently answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Peter Maniscalco

Peter Maniscalco
Assistant

PM:RS

APPROVED NOV 27, 1940

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN